David CLARK, Appellant,

v.

UNITED STATES, Appellee.

No. 12970.

District of Columbia Court of Appeals.

Argued April 10, 1979.

Decided Feb. 25, 1980.

Constance T. O'Bryant, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on brief, for appellant.

William E. Bucknam, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed and the case was argued, John A. Terry, Michael W. Farrell, and John McDougall Kern, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and FERREN, Associate Judges.

NEWMAN, Chief Judge:

Following a jury trial appellant was convicted of first-degree murder while armed, D.C.Code 1973, §§ 22–2401, 22–3202. On this appeal, appellant presents two issues for our consideration. Appellant contends that the trial court, over his objection, erroneously admitted into evidence under the state-of-mind exception to the hearsay rule, certain hearsay statements of the deceased that tended to show: (1) the conduct, attitude, and feelings of the accused and the deceased toward each other, and (2) that the declarant intended to go to Federal City College on the morning of her death; that she intended to meet the appellant when she got there; and that this made it more probable that she did in fact go and meet the appellant there.

In Part I of this opinion we set forth the pertinent facts and trial proceedings. In Part II, we discuss the state-of-mind exception to the hearsay rule. In Part III, we analyze appellant's two specific contentions and conclude that the admission of the chal-

lenged testimony under the state-of-mind exception, when the declarant's own state of mind was not in issue at trial, was error. Finally, in Part IV we summarize our findings and conclusions. We reverse and remand for a new trial.[1]

I

At trial, evidence was presented that at approximately 8:45 a. m. on March 10, 1976, Tawana Thomas was accosted by a man in front of the then Federal City College. The man dragged her a short distance to a white Mercury Cougar that was parked nearby, where he threw her onto the front seat and shot her three times, killing her. The gunman then left the car and fled down a nearby alley. When detectives of the Metropolitan Police Department arrived at the scene, they found the victim lying in the white Cougar. On the ground beside the driver's side of the car was a torn driver's license in the name of Jeffrey Head.

A check with the Department of Motor Vehicles revealed that the Cougar was registered to Mrs. Rose Head, the mother of Jeffrey. Homicide detectives immediately went to the home of Jeffrey Head, placed him in custody, and transported him to police headquarters for questioning. Mr. Head denied any involvement in the shooting and told detectives that appellant had borrowed the Cougar the day before. Upon learning that the police were looking for him in connection with the shooting, appellant presented himself to the Homicide Squad and was placed under arrest. He was subsequently indicted for the murder of Tawana Thomas.

At trial, one of the principal government witnesses was Ms. Joyce Drumming, a professor at the college at the time of the shooting. She testified that on the morning of the murder she had approached the side of the college building at 2nd and E Streets, N.W., and heard a woman screaming. She looked across the street and saw a man and a woman struggling. She crossed the street to assist the woman and twice was able to see clearly the face of the assailant, each time for approximately two or three seconds. She subsequently described the man to the Assistant United States Attorney and to the grand jury as having very large eyes, a clean-shaven face, and "that very clean Muslim look." (Tr. 26) At the trial Ms. Drumming made an in-court identification of appellant as the assailant.[2]

There was undisputed evidence that appellant and the decedent had a 5-year-old daughter and had lived together until approximately 11 months before the shooting. It was the government's theory that the murder of Tawana Thomas was the culmination of what had been a stormy relationship between the decedent and appellant. Through a series of witnesses who related hearsay statements that had purportedly been made by the decedent, the government introduced evidence of a number of assaults, threats, and hostile acts which allegedly had been directed toward Ms. Thomas by the appellant. The court permitted the statements to be admitted under the state-of-mind exception to the hearsay rule, ostensibly for the purpose of demonstrating the attitude, conduct and feelings of the accused and deceased toward each other.

Irving Thomas, the father of the decedent, testified that the decedent had told him that in August 1975, appellant had tried to kick open the door of the family

1. Appellant also contends that the government's closing argument was improper, requiring reversal of his conviction. In view of our disposition of this case on the evidentiary issue, we need not reach this contention.

2. Ms. Drumming's identification was the subject of considerable dispute at trial. The first time she was called upon to make an identification was several months after the shooting, prior to testifying before the grand jury. She was shown a photograph of the line-up and selected two people—one because of his shoulders and appellant, because of his facial features. Some months later she was shown the photograph again by an Assistant United States Attorney. It is unclear whether on this second occasion the witness identified only the appellant or whether she again picked the same two individuals as she had done on the previous occasion.

apartment in an attempt to see her, but had broken into the downstairs apartment of Algie Smith by mistake.[3] Mr. Thomas also testified that the decedent had told him that appellant had approached her one morning in late 1975, and had pulled out a gun threatening to kill her. According to this account, only the fortuitous passing of a police car had caused the appellant to desist.

Pamela Jackson, appellant's aunt, similarly related conversations she had had with decedent in which Tawana had related to her details of both the "gun" incident of late 1975 and the incident of August 1975 when appellant had broken into Algie Smith's apartment. Furthermore, both Mr. Thomas and Ms. Jackson testified to conversations they had had with decedent in which Tawana had informed them that appellant had called her and kept pressuring her to go back with him. Charles Lockhart, appellant's probation officer, testified that Tawana had told him that appellant was harassing her and pressuring her to go back with him.

Murad Akbar, a government witness, stated that he and the decedent had once been engaged to be married, but that the decedent had broken off the engagement, stating that appellant was aggravating her by pressuring her to return to him.

William Brown, decedent's boyfriend at the time of her death, testified that on the evening of March 9, 1976, the decedent received a telephone call from an unidentified person. After hanging up, the decedent told him that David Clark, the appellant, had been the caller and had requested to see her the next morning at Federal City College. According to Mr. Brown, the decedent had concluded by telling him that she would decide overnight whether to go and meet the appellant. She also indicated that in any event she did expect to attend her regular classes at the college.

Appellant objected to the hearsay testimony as it was offered, but the trial court overruled each objection. Instead, after each witness testified to a hearsay statement, the court gave the following cautionary instruction to the jury:

THE COURT: Ladies and Gentlemen, the Court is going to give you a cautionary instruction. A witness has testified to conversations he had with the deceased. That testimony is hearsay. It is not admissible for the truth of the statement made by the deceased, and you should accord no weight on the question of whether or not the incidents described by the deceased actually occurred. It is admissible only to show the state of mind of the deceased as evidence of the conduct, attitude, and feelings of the accused and the deceased toward each other.

Appellant presented an alibi defense. He testified that on March 9, 1976, he went to see Jeffrey Head to borrow his car. According to appellant, Head told him to keep the car until later that day and then to park it in a nearby circle. Appellant testified that that evening he used the car to meet his girlfriend, Kathleen West, at her grandmother's house. They drove to a nearby drug store and then returned to the house of Ms. West's grandmother. While Ms. West waited, he went to park the car at the designated circle and then walked back to meet her. He stated that he and Ms. West then caught a cab to Ms. West's home in Southeast, where they spent the night. Appellant claimed he did not leave Ms. West's home until 9:30 or 10:00 a. m. the next morning, March 10, 1976. Ms. West's testimony at trial conformed with appellant's recitation of the sequence of events during the hours in question.

Following the close of all the evidence, the jury returned a verdict of guilty on a charge of first-degree murder while armed. This appeal followed.

---

3. Mrs. Algie Smith, a resident of the apartment appellant had mistakenly broken into, witnessed the incident and testified about it at trial. Appellant, subsequent to the break in, was arrested for the unlawful destruction of property, pled guilty, and was placed on probation. These facts were stipulated to at trial.

## II

"[T]he state of mind exception to the hearsay rule allows the admission of extra-judicial statements to show the state of mind of the declarant . . . if that is at issue in the case." *Rink v. United States*, D.C.App., 388 A.2d 52, 57 (1978), *quoting United States v. Brown*, 160 U.S. App.D.C. 190, 194, 490 F.2d 758, 762 (1973) (as amended in 1974). *See Campbell v. United States*, D.C.App., 391 A.2d 283, 287 (1978); Fed.R.Evid. 803(3). Several types of statements are admissible under the state-of-mind exception to the hearsay rule due to their presumed reliability and probative value.

 The first type of statement directly conveys the declarant's then-existing emotional state, *e. g.*, "I am afraid of X." When related by a witness other than the declarant, this statement is clearly hearsay because the witness is testifying to an out-of-court statement of the declarant which only possesses evidentiary value if the jury accepts it for its truth. *See United States v. Brown, supra*, 160 U.S.App.D.C. at 195, 490 F.2d at 763. However, because such a statement contains sufficient indicia of reliability, it is generally admissible under the state-of-mind exception in cases where the declarant's state of mind is at issue. *See Bennett v. United States*, D.C.App., 375 A.2d 499, 503 (1977). It is important to note that this type of statement carries

implicit within it an inference that the declarant has reason to fear X. The statement is not considered sufficiently reliable, however, to prove X's (as opposed to the declarant's) state of mind. *See United States v. Brown, supra*, 160 U.S.App.D.C. at 198, 490 F.2d at 766.

 A second type of statement which is admissible under the state-of-mind exception is one in which the declarant has related a past bad act of the defendant. For example, the statement "D threatened me", may be used to prove that the declarant feared D. *Bennett v. United States, supra* at 503. Where the defendant in a murder case has raised a defense of accident, suicide, or self-defense, the victim's mind is of particular concern to the jury. *See United States v. Brown, supra*, 160 U.S.App.D.C. at 199, 490 F.2d at 767; *Bennett v. United States, supra* at 502–03; *State v. Goodrich*, 97 Idaho 472, 477 n.7, 546 P.2d 1180, 1185 n.7 (1976); *People v. White*, 401 Mich. 482, 504–06, 257 N.W.2d 912, 922–23 (1977).[4] This type of statement, however, also includes the allegation of an act which has not been proven by competent evidence. The danger is that the jury, even with a proper limiting instruction, may be unable to use the statement as evidence of the declarant's state of mind without also erroneously concluding that the incident related in the statement has been proven to have occurred.[5]

---

4. [T]he courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant's claim of self-defense as justification for the killing. When such a defense is asserted, a defendant's assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance. Second, where defendant seeks to defend on the ground that the deceased committed suicide, evidence that the victim had made statements inconsistent with a suicidal bent are highly relevant. A third situation involves a claim of accidental death, where, for example, defendant's version of the facts is that the victim picked up defendant's gun and was accidentally killed while toying with it. In such cases the deceased's statements of fear as to guns or of defendant himself (showing he would never go near defend-

ant under any circumstances) are relevant in that they tend to rebut this defense. [*United States v. Brown, supra*, 160 U.S.App.D.C. at 199, 490 F.2d at 767 (footnotes omitted).]

5. The leading example of such a situation is the case of *Shepard v. United States*, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933). In *Shepard* the petitioner had been convicted of the murder of his wife by poisoning. At trial, the government introduced evidence of a conversation that had taken place between the deceased and her nurse during the deceased's final illness in which she had said, "Dr. Shepard has poisoned me." This evidence, which exhibited the fact that the deceased had made declarations consistent with "the persistence of a will to live", *id.* at 103, 54 S.Ct. at 25, was offered to rebut the defense theory that the decedent had committed suicide. In ruling that the evidence was inadmissible, the Court said:

It will not do to say that the jury might accept the declarations for any light that they

■ A third type of statement admissible under the state-of-mind exception conveys the intent of the declarant to perform an act in the future, where there is an issue as to whether in fact the act later was performed. *See Mutual Life Insurance Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892). Thus, if the "intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party." *Id.* at 295, 12 S.Ct. at 912. In *Hillmon*, there was serious doubt as to whether the body which had been found at Crooked Creek was that of the insured, Hillmon, or of another man, Walters. A letter signed by Walters, written prior to the projected expedition to Crooked Creek, was allowed into evidence to show that Walters "had the intention of going, and of going with Hillmon, which made it more probable both that he did go and that he went with Hillmon . . .." *Id.* at 296, 12 S.Ct. at 913.

The common denominator of the several types of hearsay admissible under the state-of-mind exception is that each statement goes only to the state of mind of the declarant, when that is at issue.[6] In homicide cases, statements of the declarant's state of mind have been held admissible in a number of different contexts. First, hearsay evidence of prior threats and assaults directed at the defendant by the deceased declarant have been held admissible, even if uncommunicated to the defendant himself, to show that the defendant was not the aggressor in the altercation which resulted in the death of the decedent or that the defendant reasonably *was* in fear of the decedent. *United States v. Burks*, 152 U.S.App. D.C. 284, 286–87 & n.4, 470 F.2d 432, 434–35 & n.4 (1972); *Evans v. United States*, 107 U.S.App.D.C. 324, 325–26, 277 F.2d 354, 355–56 (1960); *Griffin v. United States*, 87 U.S.App.D.C. 172, 174, 183 F.2d 990, 992 (1950). Second, hearsay evidence of the

deceased declarant's prior statement as to his intent to go to a particular place have been held admissible under the state-of-mind exception where his presence at that place is at issue in the case. *See, e. g., State v. Perelli*, 125 Conn. 321, 324–25, 5 A.2d 705, 707 (1939); also in the civil context, *see Mutual Life Insurance Co. v. Hillmon, supra.* Third, the hearsay statements of the deceased declarant have been held admissible to negate defense claims at trial about the victim's role in the homicide that the death was the result of suicide, accident, or self-defense. *United States v. Brown, supra*, 160 U.S.App.D.C. at 199, 490 F.2d at 767.

For example, when a defendant interposes a claim of accidental death, as with claims of self-defense or suicide, an issue of fact is raised as to whether the victim would have conducted himself in the manner in which the defendant claims he did. The case of *People v. Lew*, 68 Cal.2d 774, 69 Cal.Rptr. 102, 441 P.2d 942 (1968) (en banc), concerned the fatal shooting of the defendant's girlfriend. Certain hearsay evidence was introduced to show both that the decedent feared the defendant, and that she possessed a strong aversion to firearms. This evidence would tend to rebut the defendant's claim that the decedent had voluntarily accompanied him to his apartment, that once there she had sat on his lap and examined his firearm, and that the gun had subsequently gone off by accident, fatally wounding the decedent in the left temple. *Id.* at 779–80, 781 n.3, 69 Cal.Rptr. at 105, 106 n.3, 441 P.2d at 945, 946 n.3; *id.* at 781, 69 Cal.Rptr. at 106, 441 P.2d at 946 (Burke, J., dissenting); *People v. Ireland*, 70 Cal.2d 522, 531–32, 75 Cal.Rptr. 188, 192–93, 450 P.2d 580, 584–85 (1969) (en banc); *United States v. Brown, supra*, 160 U.S.App.D.C. at 199, 490 F.2d at 767 & n.34. *See also People v. White, supra*, 401 Mich. at 504–06, 257 N.W.2d at 922–23.

cast upon the existence of a vital urge, and reject them to the extent that they charged the death to someone else. Discrimination so subtle is a feat beyond the compass of ordinary minds. The reverberating clang of those accusatory words would drown all weaker sounds. . . . When the risk of

confusion is so great as to upset the balance of advantage, the evidence goes out. [*Id.* at 104, 54 S.Ct. at 25–26 (citations omitted).]

6. *Contra, Mutual Life Insurance Co. v. Hillmon, supra; People v. Alcalde*, 24 Cal.2d 177, 148 P.2d 627 (1944).

■ Of course, even where such evidence bears a significant degree of relevance to the issue in question, it must be excluded if it is of a highly prejudicial nature. *United States v. Brown, supra,* 160 U.S.App.D.C. at 199, 490 F.2d at 767; *People v. Lew, supra,* 68 Cal.2d at 780, 69 Cal.Rptr. at 105, 441 P.2d at 946; *State v. Bartolon,* 8 Or.App. 538, 547, 495 P.2d 772, 776 (1972) (en banc).

In the present case the trial court, over appellant's objection, admitted hearsay statements of the decedent in which she recounted her fear of appellant as well as threats and assaults that appellant had allegedly directed at her. In addition, the trial court admitted, through the testimony of William Brown, certain statements of the decedent concerning her intention to see the appellant on the day of the murder.

### III

The government contends that the trial court properly admitted the challenged testimony upon authority of this court's opinion in *Gezmu v. United States,* D.C.App., 375 A.2d 520 (1977). It contends that *Gezmu* created a new exception to the hearsay rule, a so-called "marital homicide" exception, which would render admissible the statements of the decedent not only to show the decedent's feelings toward the defendant, but also to show the defendant's feelings toward the decedent if the defendant and decedent were in a marital-type relationship.[7]

In *Gezmu* the defendant, charged with the murder of his wife, raised the claim of accidental death. On appeal, the defendant challenged the direct, nonhearsay testimony of two individuals who had witnessed several altercations between the appellant and the decedent. He also challenged the admissibility of certain hearsay statements of the decedent which bore on the decedent's state of mind. While the court's opinion does not specifically delineate the different

rules of evidence which were applied to allow the admission of each piece of challenged testimony, it is clear that the direct testimony was admissible due to the fact that the defendant's prior conduct was relevant both as to motive and malice, which were at issue. *See Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). Furthermore, it is also clear that the hearsay testimony was admissible because the decedent's state of mind was at issue by virtue of the claim of accidental death. *See Rink v. United States, supra.*

Appellant there claimed that on the morning of the shooting, he had been in the bedroom that he shared with the decedent. He testified that he had heard footsteps in the hallway, followed by the slam of the bedroom door. When the door slammed, he called out his wife's name. Receiving no response and believing his wife was still in bed asleep, he picked up the gun, pointed it at the door where he believed the intruder to be, and it unexpectedly discharged. In essence, appellant pictured his wife as coming into the bedroom, slamming the door, and then standing mutely by while he called out to her. The hearsay statements that were held admissible bore directly on whether the victim would have conducted herself in the manner which appellant suggested, for they portrayed her as a woman "fearful of her husband . . . who made every effort to satisfy his demands . . . .", *Gezmu, supra* at 522, and thereby created serious doubt as to the validity of his claim that the shooting had been accidental. We reject the government's contention that *Gezmu* created a "marital homicide" exception to the hearsay rule. In so far as the *Gezmu* holding relates to the admissibility of hearsay, it holds that hearsay testimony of the decedent-declarant's state of mind may be admissible where that state of mind is a relevant issue.[8]

---

7. The trial court instructed the jury that the hearsay testimony of Irving Thomas, Pamela Jackson, Charles Lockhart and Murad Akbar was admissible solely "to show the state of mind of the deceased as evidence of the con-

duct, attitude and feelings of the accused and the deceased toward each other."

8. The government and the trial court apparently have misread a portion of *Gezmu* in which the court said:

In the present case there is no relevant issue as to the decedent-declarant's state of mind at the time of, or prior to, her murder. Furthermore, there is no question that she was outside of Federal City College at the time of her death—her body was found there and there has been no dispute as to the identification of her body. At trial, the defendant failed to raise any of the three defenses—accident, self-defense, or suicide by the decedent—which traditionally have been understood to call into question the state of mind of the deceased declarant. Rather, appellant's defense was predicated on a claim of mistaken identity and alibi which he attempted to substantiate primarily through his own testimony and the testimony of his girlfriend, Kathleen West. What is at issue in this case is the identity of the decedent's murderer. In determining whether in fact appellant was the murderer of Tawana Thomas, it is relevant to know, among other things, whether appellant possessed a motive for committing the murder, whether he was an individual capable of performing such a violent act, and whether he was present at the scene of the crime on the day that it was committed. Evidence concerning appellant's prior relationship with the decedent and the state of that relationship prior to

and at the time of the murder is therefore indicative of the motive appellant may have possessed for committing the act. Evidence as to prior altercations of a substantive and violent nature between appellant and the decedent is probative of the question of whether the appellant is an individual capable of committing such a violent act as Tawana Thomas' murder. In each instance, however, the state of mind of the deceased declarant is *not* at issue. The first issue presented is not whether the declarant, Tawana Thomas, feared the appellant and no longer wished to have a relationship with him, but rather whether the appellant felt jealousy, hatred, or other ill will toward Ms. Thomas which would have provided him with a reason for committing the murder. The second issue presented is not whether the declarant believed herself to have been threatened or abused by appellant. Rather, the question is whether appellant had in fact perpetrated such assaults and threats on the declarant, for this would demonstrate that the appellant was capable of violent acts. This being the case, there can be no question that the traditional function of the state-of-mind exception, as a means of allowing into evidence out-of-court statements of the declarant to prove his or her state of mind when that is directly called

Furthermore, the conduct, attitude, and feelings of the accused and the deceased toward each other may be shown in a murder case to establish motive, malice, or intent. (Citation omitted).

Cases in which the evidence shows instances of previous hostility between a husband and wife are sometimes treated as though they form a group by themselves. . . .

We agree with the government's position that the testimony was relevant. The statements presented went to the questions of malice and motive on the part of appellant. In addition, they revealed a woman involved in a troubled marriage, . . . fearful of her husband and who made every effort to satisfy his demands. The evidence properly called into doubt appellant's claim that such a woman would slam the bedroom door and then stand mute while he called out to her. . . . [*Id.* at 522 (emphasis added).]

In the present case, the cautionary instruction given to the jury by the court after each piece of hearsay testimony was presented carefully paralleled the language of the first sentence we have quoted above from the opinion in *Gezmu, supra* at 522. It is apparent that both the government and the trial court inter-

preted the language from *Gezmu* as pertaining to the admissibility of *hearsay* statements as competent evidence of the conduct, attitude, and feelings of the accused and the deceased toward each other in a murder case. When the quoted language is read in context, however, it is clear that the discussion in *Gezmu* is concerned solely with the *relevance* of the proffered testimony to the issues of the defendant's motive, malice, and defense of accidental death. It is equally evident that the quoted discussion did not in any way indicate that hearsay testimony, otherwise inadmissible, would be allowed into evidence, accompanied by a limiting instruction, under a so-called "marital homicide" exception. Each of the four challenged pieces of testimony in *Gezmu* was properly admitted under traditional evidentiary rules: two pieces of challenged testimony were direct evidence relevant to the issues of malice and motive; two pieces of challenged testimony, while hearsay, were admissible under the state-of-mind exception to the hearsay rule, as the decedent-declarant's state of mind was at issue there, unlike in the present case.

into issue, is not implicated in the present case. Thus, the trial court erred in admitting the challenged testimony.

The government presents a second contention with respect to the testimony of Mr. William Brown. Mr. Brown testified that on the evening of March 9, Tawana Thomas related to him the substance of a telephone conversation that had just taken place between herself and the appellant. Ms. Thomas allegedly said that David Clark had asked her to meet him the next morning at Federal City College. She indicated that while she expected to attend classes as usual, because of her fear of appellant, she was uncertain as to whether she would meet with him before class. The government contends that under the rationale of *Mutual Life Insurance Co. v. Hillmon, supra,* the hearsay testimony of Mr. Brown should be admissible as circumstantial evidence of the *defendant's* subsequent conduct.

■ As previously noted, the state-of-mind exception to the hearsay rule permits the introduction of a person's out-of-court declarations of future intent to perform an act, to show that the act actually was performed. *See United States v. Brown, supra* 160 U.S.App.D.C. at 194, 490 F.2d at 762. *Hillmon, supra,* is the seminal case illustrating this subcategory of the state-of-mind exception. We have previously described in Part II of this opinion how, in *Hillmon,* the Supreme Court held that letters were properly admissible as evidence that Walters "had the intention of going, and of going with Hillmon, which made it more probable both that he did go *and that he went with Hillmon* . . .." *Id.,* 145 U.S. at 296, 12 S.Ct. at 913 (emphasis added). Thus, under *Hillmon,* the declarant's statement of future intent was admissible for two purposes, to prove: (1) that the declarant went to the place indicated by his statement of intention, and (2) that the declarant went there with the other named party. It is well-settled that the declarant's statement of future intent to perform an act is admissible to show that the declarant did perform the act, if the performance of the act is at issue. *See, e. g., United States v. Brown, supra,* 160 U.S.App.D.C. at 194, 490 F.2d at

762. However, the question of whether the declarant's intention to perform an act is admissible to show another person's performance of an act, pursuant to the second prong of *Hillmon,* has been the subject of considerable controversy. *Compare Mutual Life Insurance Co. v. Hillmon, supra* and *People v. Alcalde, supra, with Throckmorton v. Holt,* 180 U.S. 552, 573–74, 21 S.Ct. 474, 482–83, 45 L.Ed. 663 (1901); *United States v. Brown, supra,* 160 U.S.App.D.C. at 203 n.42, 490 F.2d at 771 n.42; *People v. Alcalde, supra* (Traynor, J., dissenting); *People v. Gress,* 107 Cal. 461, 40 P. 752 (1895); *State v. Perelli, supra,* 125 Conn. at 324–25, 5 A.2d at 707; *State v. Farnam,* 82 Or. 211, 250–53, 161 P. 417, 429–30 (1916) (en banc) (Harris, J., concurring); *and id.* at 258–75, 161 P. at 431–36 (Burnett, J., dissenting). *See, e. g., United States v. Pheaster,* 544 F.2d 353, 379–80 (9th Cir. 1976), *cert. denied sub nom. Inciso v. United States,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); Hinton, *States of Mind and the Hearsay Rule,* 1 U.Chi.L.Rev. 394, 403–23 (1934); *and* Maguire, *The Hillmon Case—Thirty-three Years After,* 38 Harv.L. Rev. 709 (1925). Also, *see generally* Seligman, *An Exception to the Hearsay Rule,* 26 Harv.L.Rev. 146 (1912); Hutchins and Slesinger, *Some Observations on the Law of Evidence—State of Mind to Prove an Act,* 38 Yale L.J. 283 (1929); *and* Annot., 113 A.L.R. 268 (1938).

The validity of the second prong of *Hillmon* has been seriously questioned due to the prejudice to the defendant that results from the departure from traditional state-of-mind concepts. For example, the House Report accompanying Fed.R.Evid. 803(3), which sets forth the federal state-of-mind exception, states that the *Hillmon* doctrine is limited to include statements of intent by the declarant only to prove his future conduct, not the anticipated conduct of another person. H.R.Rep.No. 93–650, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7075, 7087. *But see United States v. Moore,* 571 F.2d 76, 82 n.3 (2d Cir. 1978); *United States v. Stanchich,* 550 F.2d 1294, 1297–98 n.1 (2d Cir. 1977); *United States v. Pheaster, supra.*

■ We accept the approach taken in the House Report not only because it admits statements of intention consistent with the standards applied to the admission of other state-of-mind evidence, but also because the declarant's statements, if reliable at all, are only reliable as to the declarant's own intention. Needless to say, if the statements not only involve the declarant's intention but also those of the defendant, and the declarant's intention is not an issue in dispute, the prejudice to the defendant is compounded. *See, e. g., People v. Alcalde, supra* (victim's statement that she was going to meet Frank held admissible to show that Frank met the victim). The logic of Justice Traynor's dissent in *People v. Alcalde* is as persuasive today as when it was first written:

> Such a declaration could not be admitted without the risk that the jury would conclude that it intended to prove the act of the defendant as well as of the declarant, and it is clear that the prosecution used the declaration to that end. There is no dispute as to the identity of the deceased or as to where she was at the time of her death. Since the evidence is overwhelming as to who the deceased was and where she was when she met her death, no legitimate purpose could be served by admitting her declarations of what she intended to do . . . . The only purpose that could be served by admitting such declarations would be to induce the belief that the defendant went out with the deceased, took her to the scene of the crime and there murdered her. Her declarations cannot be admitted for that purpose without setting aside the rule against hearsay. [*Id.,* 24 Cal.2d at 183, 148 P.2d at 633.]

Clearly, to admit such evidence where the victim's intentions are irrelevant violates one of the fundamental concepts of the state-of-mind exception: that the declarant's own state of mind be relevant to a material issue in the case. Accordingly, we reject the second contention of the government and find that it was error to admit the testimony of Mr. William Brown with

respect to the decedent's intention of meeting the appellant at Federal City College on the morning of her death.

## IV
### *Conclusion*

As we have shown, the common factor in admitting evidence under the state-of-mind exception to the hearsay rule is the use of the declarant's statement as told to and by a third party as evidence of the declarant's state of mind at the time of the statement, if the declarant's state of mind is at issue. When thus used, the declarant's statements are highly probative of his feelings and can be considered competent evidence of his then existing mental state so long as their probative value is not outweighed by the inherent potential for prejudice to the defendant if the jury should misuse the evidence.

■ We conclude that the statements of the decedent concerning her fear of appellant, the alleged threats and assaults made against her by appellant, and her intention of meeting the appellant the morning of her death at Federal City College, were improperly admitted under the state-of-mind exception to the hearsay rule because the declarant's state of mind was never in issue at trial. In determining whether reversal is required, we are governed by the standard enunciated in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946): [I]f we "cannot say, with fair assurance, after pondering all what happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error", we must reverse.

The erroneously admitted testimony provided evidence that appellant was not only capable of murder but also had in fact committed a previous crime of violence toward the same victim, and placed the appellant at the murder scene, thereby effectively negating his defense. It would be unrealistic to assume that the prejudice inherent in these statements did not substantially affect the verdict.[9]

*Reversed.*

9. Our holding today does not pertain to the testimony of Irving Thomas and Pamela Jack- son regarding the fact of the August 1975 break in at the apartment of Mrs. Algie Smith. Mrs.

Smith provided direct testimony as to this incident and the facts were stipulated at trial. Therefore, since the testimony of Mr. Thomas and Ms. Jackson is merely cumulative, it was harmless error, if error at all.