Arnold J. HILL, Appellant,

v.

UNITED STATES, Appellee.

No. 89–639.

District of Columbia Court of Appeals.

Argued Jan. 16, 1991.
Decided May 30, 1991.
Rehearing and Rehearing En Banc
Denied Dec. 18, 1991.

Carol Steiker, Public Defender Service, with whom James Klein and Page Kennedy, Public Defender Service, were on the brief, for appellant.

Stevan E. Bunnell, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Elizabeth Trosman, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

After a jury trial, appellant was convicted of first-degree murder while armed [1] for the strangling death of his former girl friend, Shelby Duncan. On appeal he contends that the trial court erred in admitting evidence of a prior attack on Duncan under the motive exception set forth in *Drew v. United States*, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). Although we agree with appellant that the amount of evidence presented about that earlier incident was excessive, we nevertheless affirm the conviction because the evidence was admissible to prove appellant's motive as well as the circumstances surrounding the murder, and because the defense, though challenging its admissibility, never objected to its quantity.

I

Appellant Hill shared an apartment with Duncan and her three children until May 19, 1987, when Duncan told him to leave. His departure was precipitated by an assault on Duncan during which Hill choked her and held a pillow over her face. After freeing herself from his grasp, Duncan called the police and her sister, who arrived and took the children to stay with their grandmother. Duncan filed a complaint concerning the assault with the Citizens Complaint Center later that day.

Despite their earlier breakup, Duncan allowed Hill to sleep on her couch on the night of August 6, 1987. The following morning Duncan discovered $700 missing from her purse. Drawing the obvious inference that Hill had taken the money, she reported the theft to Hill's employer and filed a second complaint with the Citizens Complaint Center.

A hearing on both complaints was held at the Citizens Complaint Center on August 13. Hill denied that he had tried to suffocate Duncan on May 19, but admitted that he had picked her up by the throat and thrown her across the room because she had "gotten in [his] face." Hill also agreed to make restitution of the $700, although he refused to admit that he had taken the money. Just as Duncan was leaving the hearing, Hill approached and whispered something to her which left her visibly shaken. As soon as Hill walked away, Duncan told the Assistant United States Attorney who had conducted the hearing that Hill had just threatened to kill her. As she spoke, her voice quavered, and her hands were trembling.

---

1. D.C.Code §§ 22–2401, 22–3202 (1989).

On the morning of September 4, less than a month later, Duncan's nude body was found in her bedroom by her children. She had been strangled. There were no signs of forced entry, a fact which suggested that Duncan herself might have let the killer into her apartment. The medical examiner determined the time of her death to have been between 6:40 p.m. on September 3 and 1:40 a.m. on September 4. Police officers investigating the murder located a witness who had seen Duncan in the building and spoken with her shortly after 11:30 p.m. on September 3, and three others who had seen Hill leaving the apartment house sometime after midnight.

Hill was arrested and charged with Duncan's murder. Before trial began, the government moved to admit evidence of the May 19 assault. At the hearing which followed, the prosecutor argued that the assault, theft, and subsequent complaints which were filed with the Citizens Complaint Center provided Hill with a motive for the murder. After weighing the probative value of the proffered evidence against its prejudicial effect, the court granted the government's motion, ruling that "the issue of motive [was] an essential part of the Government's circumstantial case" and that a stormy relationship was highly probative of motive in the context of a domestic homicide.

At trial the government presented considerable evidence about Hill's May 19 attack on Duncan. Duncan's nine-year-old daughter testified that she awoke to hear her mother exclaim, "Why are you choking me? Why are you trying to kill me?" Duncan's six-year-old son testified that he was awakened during the night by his mother's cries and that he heard his sister say to Hill, "Get off my mommy." The police officer who answered Duncan's call recounted what he knew about the events of that evening. The government played for the jury the tape of Duncan's "911" call to the police during which Duncan said, "I have been choked, you name it." Duncan's sister testified that when she picked up the children after the incident, Duncan told her, "He was trying to kill me, he was choking me, he wouldn't let me out, he was trying to kill me, he had a pillow over my head." The Assistant United States Attorney who conducted the hearing at the Citizens Complaint Center testified about Hill's statements at that hearing and about the post-hearing threat to kill Duncan.

Hill contends that the evidence of his assault on Duncan almost four months before her death had no logical relevance because it failed to prove that he had any reason to kill her. He argues that this evidence encouraged the jury to conclude that his earlier feelings and actions made it more likely that he, rather than someone else, felt and acted in a similar fashion at a later date. This, Hill insists, is impermissible "propensity" evidence.

The government maintains that evidence of the assault tended to prove the motive for Hill's murder of Duncan because he was angered by the complaints she filed against him and by the fact that she reported his activities to his employer, who eventually fired him. Since there was no eyewitness testimony about the murder, the government had to rely on evidence that Hill had a motive to kill Duncan in order to prove his identity as the murderer. When the prosecutor made the same argument below, the trial court agreed with him, citing *Clark v. United States*, 412 A.2d 21 (D.C.1980), as authority for the proposition that the violent relationship between Hill and Duncan was probative of Hill's motive to kill her.

II

"It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime, from which the jury may infer that the defendant committed the crime charged." *Drew v. United States, supra,* 118 U.S.App.D.C. at 15, 331 F.2d at 89 (emphasis in original). Because of the obvious potential that such "other crimes" evidence may deny the defendant a fair trial, evidence of this sort is presumptively inadmissible. *Thompson v. United States,* 546 A.2d 414, 419 (D.C.1988); *Campbell v. United States,* 450 A.2d 428, 430

(D.C.1982). This presumption of exclusion exists "because of the likelihood that jurors will impermissibly infer that the defendant has a propensity to engage in criminal behavior and so presume guilt." *Landrum v. United States*, 559 A.2d 1323, 1325 (D.C.1989) (citations omitted). Only when the evidence of wrongful behavior is relevant under one or more recognized exceptions to this exclusionary principle can it be presented to the jury. There are five principal *"Drew* exceptions." Evidence of other crimes "is admissible when relevant to (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan ... and (5) the identity of the person charged with the commission of the crime on trial." *Drew v. United States, supra,* 118 U.S.App.D.C. at 16, 331 F.2d at 90 (footnote omitted).[2]

██ Hill maintains that the trial court erred in concluding that the evidence of his prior assault on Duncan was probative of motive. He suggests that there are really two types of motive evidence: "true" motive evidence, which shows the reason why the defendant may have a particular motive or purpose, and other evidence which merely suggests the existence of a motive without shedding light on why the defendant is so motivated. In the latter category, he argues, evidence of criminal propensity is admitted under the mistaken label of motive. In support of this argument, he cites R. LEMPERT & S. SALTZBURG, A MODERN APPROACH TO EVIDENCE 226 (2d ed. 1982).

We know of no court which has recognized this artificial distinction, and we decline to do so in this case. We see no reason to differentiate between "direct" (or "true") and "indirect" evidence of motive— *i.e.,* between evidence that a prior crime "created" or gave rise to the motive for the present crime, and evidence that the prior crime and the present crime are both products of the same pre-existing motive. In the latter situation, the circumstances of

the prior crime may well shed light on the motive for the present crime. *See* E. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3:18, at 45–46 (1984). If they do, then the jury is entitled to know about them unless there is some other, independent reason to keep such evidence from the jury's ears.

██ Evidence of prior instances of hostility, assaults, and the like is particularly relevant in marital homicide cases. *Rink v. United States*, 388 A.2d 52, 56 (D.C.1978); *Gezmu v. United States*, 375 A.2d 520, 522 (D.C.1977). As this court said in *Clark v. United States, supra,* "[e]vidence concerning appellant's prior relationship with the decedent and the state of that relationship prior to and at the time of the murder is therefore indicative of the motive appellant may have possessed for committing the act." 412 A.2d at 28. Such evidence is equally relevant in cases such as this one, in which the relationship between the accused and the decedent was sufficiently close over an extended period of time to warrant treating the case as one of marital homicide. *Rink v. United States, supra,* 388 A.2d at 56 n. 4; *see United States v. Bobbitt*, 146 U.S.App.D.C. 224, 228, 450 F.2d 685, 689 (1971) (evidence of "bad blood" between defendant and former girl friend, including incident in which he threatened her with a shotgun, was "obviously material in determining what motive the defendant might have had to shoot [her]").[3]

██ Motive evidence may also help to establish the identity of the defendant as the killer. "The law sharply limits the relevancy and materiality of motive in murder cases.... [However,] if the accused denies that he committed the act," as in this case, "the prosecutor is permitted, as part of his effort to prove that the particular accused did commit the act, to prove that the accused had a motive for killing

---

2. These five are not the only exceptions to the rule against admitting evidence of other crimes, but they are the main ones. *See Settles v. United States*, 522 A.2d 348, 355 n. 9 (D.C.1987).

3. It has long been recognized that where hostile emotion is to be proved, evidence that the same emotion existed in the same person at another time is admissible. *Gezmu v. United States, supra,* 375 A.2d at 522; 2 J. WIGMORE, EVIDENCE § 396 (3d ed. 1940).

the deceased." *Collazo v. United States,* 90 U.S.App.D.C. 241, 247, 196 F.2d 573, 578, *cert. denied,* 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952). Just a few months ago, we applied this principle in affirming, in a murder case, the admission of evidence of motive "because it was highly relevant to the issue of identity." We held that "where the identity of the decedent's murderer is drawn into issue, evidence of prior altercations of a substantive and violent nature between the accused and the decedent is probative...." *Green v. United States,* 580 A.2d 1325, 1328 (D.C.1990), citing *Clark v. United States, supra,* 412 A.2d at 28. Moreover, motive evidence which suggests the identity of a murderer is not dependent on the nature of the defense, as Hill contends, for the particular defense that a defendant elects to present cannot make admissible evidence inadmissible. Rather, the case law makes clear that the admissibility of evidence such as that at issue here depends on the identity of the parties, *i.e.,* on the fact that the defendant had a motive to harm this particular victim, with whom he already had an established relationship. *See Green v. United States, supra; Clark v. United States, supra; Gezmu v. United States, supra; United States v. Bobbitt, supra.*

■ Hill contends that *Campbell v. United States, supra,* is controlling here and requires reversal. We disagree; *Campbell* differs from this case in two significant respects. First, the other-crimes evidence which the government offered in *Campbell* merely showed wrongful conduct of a general nature,[4] unrelated to the crime charged (threats to do bodily harm). Second, and more importantly, the *Campbell* court did not analyze the proffered evidence under the motive exception recognized by *Drew.* Rather, it held that the three "state of mind exceptions" under *Drew*—intent, motive, absence of mistake—"were not material issues in this case," and then concluded that the challenged evidence was not admissible under

the identity exception. *Id.* at 431. Such evidence, the court said, was not sufficiently probative of the identity of the perpetrator unless "the distinctive facts relating to the manner in which the prior crimes and the crime on trial were committed are nearly identical." 450 A.2d at 431 (citation omitted). This is true when the evidence is offered under the identity exception, but the motive exception is somewhat broader, allowing evidence of past hostility between the defendant and the victim to be admitted as proof of a motive to commit the particular hostile act against the same victim for which the defendant is on trial. The key to admissibility under the motive exception, as the cases from *Bobbitt* to *Green* demonstrate, is the fact that the defendant's prior criminal conduct was directed toward the same victim.

■ Hill correctly points out that before the evidence of the prior assault was introduced, the government offered it on the theory that a motive could be found in the fact that Duncan filed two complaints with the Citizens Complaint Center. "This is good motive evidence," the prosecutor said, "whether the ... complaints are true or not." When the evidence actually came before the jury, however, as Hill says in his brief, "the government went to great lengths to prove not merely that Ms. Duncan had filed a complaint against Mr. Hill for assaulting her, but that the assault really had occurred in all of its graphic detail." While this is true, we think it is beside the point. When evidence of other crimes is admitted under a *Drew* exception, it is offered to show that the other crimes actually happened, not merely that they were reported. For the reasons we have already stated, the facts of the prior assault were probative of Hill's motive to kill Duncan. The further fact that she filed a complaint about it may have intensified the motive or given him an additional motive, but the assault itself showed that he had a

---

4. The complainant, Campbell's former girl friend, testified that Campbell had "a drinking problem," that he became abusive and jealous when intoxicated, that he had previously slapped her, and that he "usually carried" a pistol which he had sometimes fired into the air in her presence and, on one occasion, into a pillow near her head. 450 A.2d at 429.

motive and was thus properly before the jury under *Drew*.

█ Hill argues in the alternative that even if the evidence of the prior events was probative of his motive to kill Duncan, the prosecutor made improper use of that evidence in his closing argument. He relies on our holding in *Williams v. United States*, 549 A.2d 328 (D.C.1988), in which we reversed a conviction because "the government did not confine its use of the [prior criminal] incident to the purpose for which it was offered...." *Id.* at 333. In the case at bar, the prosecutor argued in rebuttal:

> What [does] the evidence show [about] who tried to choke Shelby Duncan on May 19, 1987, in the same apartment? Does the evidence show it was the invisible man that nobody saw who tried to choke her, or does the evidence show that it was Arnold Hill who tried to choke her?

Hill asserts that this is a propensity argument which, as in *Williams*, goes beyond the limited purpose for which the evidence of the May 19 incident was admitted. This assertion ignores the context of the prosecutor's argument. Defense counsel had earlier argued to the jury that Duncan was so afraid of Hill that she would never have opened the door for him voluntarily. Thus it was the defense who put Duncan's state of mind in controversy. The government, therefore, could properly counter defense counsel's argument by suggesting that even if Duncan did let Hill into the apartment, Hill still had a motive for killing her. This argument by the prosecutor, which elicited no objection at trial, does not create the propensity inference which is forbidden by *Williams*.

### III

█ One concern which we share with appellant involves the amount of evidence presented by the government about the May 19 assault. Although that evidence was properly admitted to prove motive, we agree with Hill that the lengthy parade of witnesses to prove the earlier incident was far more than necessary to establish that Hill had a motive to kill his former girl friend; indeed, it took up almost half of the trial. Given this lack of prosecutorial restraint, defense counsel could well have objected to the prejudicial effect of such a large quantity of testimony that was secondary to the main event. However, defense counsel did not object. While the admissibility of evidence of the May 19 assault was sufficiently litigated throughout the trial, the separate issue of the redundancy and excessiveness of that evidence was never raised. We must therefore decide whether the admission of such a vast quantity of collateral evidence was plain error under the test established in *Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc), *i.e.*, whether it was "so clearly prejudicial to [Hill's] substantial rights as to jeopardize the very fairness and integrity of the trial." We hold that it was not.

█ It is settled law that even when evidence of other crimes may be admissible under a *Drew* exception, it must still be excluded by the trial court when the prejudice resulting from its admission outweighs its probative value. *Campbell v. United States, supra*, 450 A.2d at 430. The trial court must make that determination at the time the evidence is offered. *Williams v. United States, supra*, 549 A.2d at 335 (citing cases). In this case the trial judge did just that. In addition, the judge in her discretion appropriately could have limited or excluded some of the testimony after a careful and informed weighing process. But she was never asked to do so. Likewise, the defense could have asked for a limiting instruction, which the judge in all likelihood would have given. *See Rink v. United States, supra*, 388 A.2d at 56–57. Here again, however, counsel never asked for an instruction. It is true that the judge *sua sponte* could have instructed the jury on the limited purpose for which the *Drew* evidence was admitted, but the omission of such an instruction "does not necessarily constitute reversible error." *Jones v. United States*, 477 A.2d 231, 242 (D.C.1984) (citations omitted).

In these circumstances, since the judge's discretion was never invoked, we see no plain error in her failure to exercise that discretion either by restricting the amount of the *Drew* evidence or by giving a limiting instruction on the use of that evidence. Nevertheless, we caution the government that our finding of no plain error is based on the specific record in this case. It should not be construed as a guarantee against reversal in similar cases of prosecutorial overkill that may come before us in the future.

## IV

We hold that the evidence of the May 19 incident between Hill and Duncan, who had shared a marital-like relationship, was probative of Hill's motive to kill Duncan on September 4 and was thus admissible under *Drew*. While the government's failure to use moderation in presenting that evidence is disturbing, it does not rise to the level of plain error. The judgment of conviction is therefore

*Affirmed.*

FERREN, Associate Judge, dissenting:

I agree with the majority that the evidence of appellant Hill's assault on Ms. Duncan approximately four months before her death was admissible under the motive exception of *Drew v. United States,* 118 U.S.App.D.C. 11, 16, 331 F.2d 85, 90 (1964). I also agree with my colleagues' concern that "the lengthy parade of witnesses to prove the earlier incident was far more than necessary to establish that Hill had a motive to kill his former girl friend; indeed, it took up almost half of the trial." *Ante* at 63. I cannot agree, however, with the majority conclusion that we may review only for plain error because defense counsel's objection to admission of this "other crimes" evidence was not sufficient to embrace "the redundancy and excessiveness of that evidence." *Ante* at 63.

Defense counsel vigorously objected to admission of evidence concerning Hill's previous assault on Duncan. Counsel argued, unsuccessfully, that motive, malice, and state of mind were not in dispute and that the evidence, therefore, was inadmissible. Counsel also argued, unsuccessfully, that this evidence was more prejudicial than probative, especially because the government would be using it to establish Hill's propensity for violence.

I believe defense counsel's objection to *any* evidence about the prior assault is equivalent to an objection to *every* bit of such evidence. I do not understand why a party who objects to any (and thus every) item of other crimes evidence must—to avoid plain error review on appeal—keep registering that concern as each detail, or each witness, is presented, as the majority opinion clearly suggests.[1]

I believe that an unqualified objection to each proffered category of other crimes evidence, before any testimony has begun, should be understood as a continuing objection that extends to every witness and detail.[2] Thus, the trial court's initial ruling

---

1. When admitting the other crimes evidence, the trial court said:

    I want to make clear that the ruling that I am making today [allowing the other crimes evidence in the government's case-in-chief] only goes to the admissibility under *Drew* and that the Defense does retain any other evidentiary objections that it has about this evidence as the Government offers it piece by piece.

    This *Drew* ruling would appear to foreclose any requirement that the defense continually object to the introduction of other crimes evidence on *Drew* grounds—in contrast with the court's view that defense counsel retained the right to object to each piece of evidence on any other evidentiary basis, such as hearsay. *See Clark v. United States,* 412 A.2d 21, 30 (D.C.1980).

2. As we have said in another context:

    The government contends that we must review Wilkins' claim of error under the plain error standard set forth in *Watts v. United States,* 362 A.2d 706, 709 (D.C.1976) (en banc), because defense counsel failed to object when the prosecutor actually read Pipkin's grand jury testimony aloud in front of the jury. We do not agree. An objection to evidence, once made and overruled, need not be renewed to the same type of evidence subsequently received. *See* E. CLEARY, MCCORMICK ON EVIDENCE § 52, at 132 (3d ed. 1984); 88 C.J.S. *Trial* § 122 (1955). It is clear from the record that defense counsel made three separate attempts to object to the prosecutor's improper method of refreshing the witness' recollection. Once the court implicitly overruled the objection by allowing the prosecutor to proceed, defense

that the proffered *Drew* evidence would be more probable than prejudicial should have remained under continuous trial court scrutiny, subject to a ruling that "enough is enough" once increasing prejudice had begun to exceed probative value. Obviously, a trial court, in ruling on an other crimes proffer, will often not be able to appreciate at the outset how prejudicial the evidence can become as the trial progresses; the relationship between probative value and prejudicial impact may change as the quantity of other crime evidence builds. In another context—a motion to sever as to defendants or offenses at a joint trial—we have recognized that the trial court has a continuing obligation to monitor for prejudice and to sever if prejudice appears at any point in the proceedings. *See Sousa v. United States*, 400 A.2d 1036, 1041 (D.C.) (citing *Schaffer v. United States*, 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979); *see also Ready v. United States*, 445 A.2d 982, 987–88 n. 10 (D.C.1982), *cert. denied*, 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983). The same approach should apply to other crimes evidence, particularly when that evidence is exhaustive, increasingly inflammatory, or otherwise prejudicial.

Here, I believe the trial court erred in tolerating "prosecutorial overkill," *ante* at 64, while presenting evidence of Hill's prior assault on Duncan. I infer from the majority's strong cautionary language that my colleagues would agree if they were applying harmless error review. Given defense counsel's objection, I believe such review—not plain error review—is the applicable standard here. On this record, I conclude the "overkill" was not harmless. I therefore would reverse and remand for a new trial.

counsel did not need to object again to preserve his claim of error on appeal.

*Wilkins v. United States*, 582 A.2d 939, 942 n. 7 (D.C.1990).