**Jose A. GARIBAY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CM–1497.**

District of Columbia Court of Appeals.

Argued Sept. 30, 1993.

Decided Dec. 6, 1993.

George E. Rickman, appointed by the court, for appellant.

Stacey L. Sovereign, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher and Roy W. Mcleese, III, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, STEADMAN, and SULLIVAN, Associate Judges.

FERREN, Associate Judge:

After a bench trial, the trial court convicted appellant Jose Garibay [1] of simple assault,

---

1. Appellant's last name appears in the record as both "Garibay" and "Gariboy." Both appellant's wife and father spelled their names as "Garibay" at trial. Appellant has filed a motion asking this court to correct the record to show that the true spelling of his name is "Garabay." We denied the motion without prejudice to appellant's proffering proof in support of the mo-

a violation of D.C. Code § 22–504 (1989). Appellant's sole contention on appeal is that the trial court erred in admitting evidence of his previous assault on the same victim, his wife. We affirm.

## I.

The government's assault charge against appellant stemmed from appellant's alleged attack on his estranged wife, Joel Garibay, on November 12, 1991. Before trial, the government filed notice of its intent to introduce testimony tending to prove that appellant had also sexually assaulted his wife over 15 months earlier on July 21, 1990. After reviewing the government's proffer, including police reports documenting Joel Garibay's complaint, the trial court found by clear and convincing evidence that the July 21, 1990, assault had taken place.[2] The court then ruled that evidence of this earlier assault was admissible because its probative value, in negating appellant's proposed self-defense argument, outweighed any prejudice it might generate. The court also alluded to the admissibility of such evidence in domestic violence cases. Pursuant to this ruling, Joel Garibay testified at trial that on July 21, 1990, several months after she and appellant had separated, appellant raped and sodomized her at gunpoint in her home, using her police service revolver.

Joel Garibay also gave the following account of the events of November 12, 1991. In the morning, before her planned leave for California, she visited her father-in-law's home on Kenyon Street, N.W., to pick up her daughter, Malea. Malea had spent the night at the Kenyon Street home with appellant, her adoptive father. After Joel Garibay entered the Kenyon Street home, she noticed a blanket and towels that appellant had borrowed from her. When she picked up a towel, appellant snatched it from her and hit her with it. Appellant then struck her repeatedly in the face with his fist and kicked her in the stomach after she fell on the floor.

To defend herself, Ms. Garibay tried to scratch appellant. Finally, appellant's father arrived and pulled appellant off her.

The government also presented testimony from a police officer who arrived on the scene in response to Ms. Garibay's subsequent call to the police from a neighborhood phone. This officer testified that when he saw Ms. Garibay her face was swollen and scratched and her lip was cut.

Appellant testified that after he had let his wife into the Kenyon Street home on November 12, 1991, she had attacked him in his bedroom, hitting and scratching him. Appellant further testified that he had pushed Ms. Garibay away, held her arms, and then forced her outside of the bedroom. The struggle between them ceased when appellant's father appeared. Appellant denied that his wife had ever been on the floor or that he had ever kicked her.

With regard to the July 21, 1990, incident, appellant claimed that his sexual contact with his wife had been consensual and that no weapon had been involved. He said that later that evening, however, he had found his wife's service revolver in her living room.

Appellant's father also testified for the defense. He stated that on November 12, 1991, he had seen Ms. Garibay on top of appellant, wrestling with him, in appellant's bedroom and that he had not seen appellant strike Ms. Garibay. The father, however, also testified that appellant "pushed her hard" and "threw her four or five feet ... to the wall in the hallway."

## II.

 Appellant contends on appeal that the trial court's admission of evidence concerning the alleged sexual assault on July 21, 1990, violated this jurisdiction's longstanding prohibition on the admission of evidence of other crimes to prove predisposition to com-

---

tion. At oral argument, appellant's counsel proffered that the correct spelling is "Garibay."

**2.** It is not clear from the record what became of Joel Garibay's complaint concerning this inci-

dent. Appellant asserts in his brief that it was dismissed. Appellant does not contest, however, the trial court's finding that the assault took place.

mit the crime charged.[3] *See Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964). As the trial court recognized, however, our case law also clearly indicates that, in cases involving domestic violence, evidence of previous hostility between spouses or lovers may be of particular relevance to show motive and intent and therefore will be admissible under the state of mind exceptions to *Drew* when these mental states are at issue in the case. *See Mitchell v. United States*, 629 A.2d 10 (D.C.1993); *Hill v. United States*, 600 A.2d 58, 61 (D.C.1991); *Clark v. United States*, 593 A.2d 186, 195–96 (D.C. 1991); *see also Green v. United States*, 580 A.2d 1325, 1327–28 (D.C.1990); *cf. Rink v. United States*, 388 A.2d 52, 56 (D.C.1978); *Gezmu v. United States*, 375 A.2d 520, 522 (D.C.1977).[4]

■ Appellant attempts to distinguish this line of cases on the ground that his state of mind was not a material issue in this case. But that is incorrect. Although appellant denied kicking his wife, he admitted that he used force to remove her from his room, suggesting that he did so only in response to his wife's attacks. Insofar as appellant thus attempted to justify his actions as self-defense, he put his state of mind at issue. *See Pounds v. United States*, 529 A.2d 791, 795 n. 6 (D.C.1987) ("The *Drew* exceptions for intent, motive, and absence of mistake are applicable ... when the defendant raises affirmative defenses (*e.g.,* ... self defense) thus putting his state of mind in issue...."); *Campbell v. United States*, 450 A.2d 428, 431 (D.C.1982) ("a claim of ... self-defense ... might have made appellant's state of mind a

contested issue on which prior wrongful conduct evidence could be received"). Specifically, a self-defense claim raises the issue of whether the defendant was acting out of an actual and reasonable fear of imminent bodily harm, or whether, instead, the defendant had some other motive and was, in fact, the aggressor. *See* Criminal Jury Instructions for the District of Columbia, Nos. 5.12, 5.16 (4th ed. 1993).

In domestic violence cases such as this, we have repeatedly said that " '[e]vidence concerning appellant's prior relationship with the decedent and the state of that relationship prior to and at the time of the [crime] is ... indicative of the motive appellant may have possessed for committing the act.' " *Mitchell*, 629 A.2d at 13 (quoting *Hill*, 600 A.2d at 61). Thus, in *Hill*, where the defendant stood accused of murdering his girlfriend, we held that evidence of the defendant's previous assault on the victim was relevant and admissible under the motive exception to *Drew*. *See Hill*, 600 A.2d at 61–63. Similarly, in this case, once appellant's self-defense claim rendered motive a material issue, the trial court could properly admit evidence of the July 1990 assault under the *Drew* motive exception to show that appellant's malice toward his wife, rather than fear of harm, prompted his acts.[5] *Cf. Rink*, 388 A.2d at 56 ("evidence of prior aggressive conduct of the defendant towards the deceased is relevant when there is a claim of self-defense" and "is probative of ... whether appellant was likely to be the aggressor ... and ... whether appellant reasonably apprehended a danger of imminent ... bodi-

3. Contrary to the government's assertions, we conclude that defense counsel adequately preserved this issue for appeal by presenting it to the trial court.

4. In *Rink* and *Gezmu*, we held that evidence of prior hostility in a relationship between the defendant and the victim was relevant and admissible, but we did not specifically analyze the admissibility of this evidence under *Drew*.

5. Citing *Parker v. United States*, 586 A.2d 720, 725 (D.C.1991), and *Williams v. United States*, 549 A.2d 328, 332–33 (D.C.1988), appellant claims that the July 1990 assault was too remote in time to be probative. Our analyses in *Parker*

and *Williams*, however, were concerned with whether the other crimes evidence at issue in those cases was admissible under *Toliver v. United States*, 468 A.2d 958, 960 (D.C.1983), as "explain[ing] the immediate circumstances surrounding the offense charged." Under our line of domestic violence cases admitting other crimes evidence, we have held admissible prior assaults involving the same defendant and victim that have taken place as much as ten years before the crime charged. *See Clark*, 593 A.2d at 189, 195–96 (holding admissible testimony concerning defendant's conduct toward decedent, including incident from 1977 or 1978, in trial for 1987 murder).

ly harm").[6]

While the trial court did not specifically go through all the steps of this analysis, the court's comments during the pretrial hearing make it clear that this was the basis on which the court decided to admit evidence of the prior assault. The trial court alluded to the case law admitting evidence of previous assaults in domestic violence cases and premised the admission of testimony about the July 1990 incident on appellant's plan to argue self-defense. Thus, contrary to appellant's contentions, the trial court's ruling did not violate our strictures in *Thompson v. United States*, 546 A.2d 414 (D.C.1988), on the admission of other crimes evidence in cases where the defendant's state of mind is not genuinely at issue.

Nor is this case comparable to *Commonwealth v. Salone*, 26 Mass.App.Ct. 926, 525 N.E.2d 430 (1988), which appellant cites for the proposition that a defendant's claim of self-defense does not automatically open the door to evidence of the defendant's bad character.[7] For here, in contrast with *Salone*, the evidence at issue was not mere generalized proof of the defendant's bad character; rather, this evidence concerned a specific incident between the complainant and the defendant in a domestic violence case and was relevant to the particular question of whether appellant had a motive to attack or reason to fear his wife.

Finally, we note that the trial court specifically ruled that evidence of the July 1990 incident was more probative than prejudicial, as it was required to do before admitting this evidence. *See, e.g., Mitchell*, 629 A.2d at 14. There was an adequate foundation for that ruling in the facts presented and in our case law.[8]

For these reasons, we conclude that the trial court did not abuse its discretion[9] in admitting testimony concerning the July 1990 incident.

*Affirmed.*

---

**6.** *Cf. also Bruce v. United States*, 471 A.2d 1005, 1006–07 (D.C.1984) (holding that evidence of two separate shooting incidents involving defendant was mutually admissible where defendant claimed to be acting in self-defense in both cases: "[t]he evidence of each shooting was probative of his motive or intent in committing the other because, taken together, such evidence tended to negate the possibility that appellant had acted in self defense and to establish rather that he had pursued a deliberate course of action in each incident").

**7.** *Cf. Johns v. United States*, 434 A.2d 463, 471 (D.C.1981) (holding that admission of evidence of murder victim's character for violence, to substantiate defendant's self-defense claim, does not open door to evidence of defendant's bad character, unless defendant first offers evidence of his or her good character). Appellant also cites *Tennessee v. Roberts*, 703 S.W.2d 146 (Tenn.1986), which is inapposite because it held inadmissible the evidence of a prior assault against a victim different from the one in *Roberts*.

**8.** We recognize that this is the first simple assault case in which this court has considered the admissibility under *Drew* of a defendant's prior assault on the same victim to negate a claim of self-defense. We have sustained the admissibility of evidence of the defendant's prior aggressive conduct toward the victim in a murder case, without relying on *Drew*, to rebut a self-defense claim. *See Rink*, 388 A.2d at 55–56. We also have approved the admissibility of evidence of a defendant's prior assault on the same victim, under the *Drew* motive exception, in a murder case involving domestic violence, where self-defense has not been at issue. *See Mitchell*, 629 A.2d at 13–14; *Hill*, 600 A.2d at 61. We believe the same principles apply in a criminal prosecution, such as this one, involving domestic violence, though not a homicide, to allow admission under *Drew* of evidence of a prior assault on the same victim as showing motive to rebut a claim of self-defense. We leave for another day the question of admissibility of such *Drew* motive evidence to rebut a self-defense claim when the case does not involve violence between persons in a marital or similarly close personal relationship.

**9.** We review the trial court's decision to admit other crimes evidence for abuse of discretion. *See Daniels v. United States*, 613 A.2d 342, 347 (D.C.1992).