Kidan GEZMU, Appellant,

v.

UNITED STATES, Appellee.

No. 10446.

District of Columbia Court of Appeals.

Argued Dec. 8, 1976.

Decided July 1, 1977.

Thomas W. Ullrich, Alexandria, Va., appointed by this court, for appellant.

William J. O'Malley, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty. and John A. Terry and Albert H. Turkus, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before FICKLING,* HARRIS and MACK, Associate Judges.

PER CURIAM:

Appellant Gezmu was convicted by a jury of the involuntary manslaughter of his wife, Jeannette, in violation of D.C.Code 1973, § 22–2405.[1] He contends on appeal that the trial court erred in (1) failing, upon objection, to declare inadmissible the testimony of certain government witnesses relating to out-of-court statements which had been made to them by the victim, (2) failing to declare inadmissible the evidence that appellant had not registered the gun with which the victim was shot, and (3) failing to give a requested self-defense instruction. We affirm.[2]

I

Addis Asefa and her husband, Abebe, shared an apartment with the Gezmus. Addis testified that on December 13, 1974, at approximately 7:00 a. m., she heard footsteps in the hallway leading to the Gezmus' bedroom. She assumed the footsteps were Jeannette's because the decedent arose early every morning to study. Addis then heard the door to the Gezmus' bedroom slam shut. After a brief period of silence, she heard a gunshot. Immediately thereafter, appellant appeared in the Asefas' bedroom doorway and asked for help.

Appellant gave two versions of the shooting before trial. First, he told the Asefas

that the shot had come from outside. However, as Addis walked to the window, she noticed a gun on the floor. Appellant then hid the weapon. When the police arrived, appellant repeated this first story. Later, he told the arresting officer, in a second version, that someone had come into the bedroom; when appellant called out his wife's name and there was no response, he grabbed his gun, pointed it at the "intruder," and fired a shot. Appellant then revealed to the officer where he had hidden the weapon.

At trial, Mrs. Grace Fletcher, Jeannette's mother, testified regarding a telephone conversation she had with her daughter two days before the shooting. Mrs. Fletcher said that Jeannette was extremely upset and indicated that she had to hang up because appellant did not approve of her using the telephone. Mrs. Fletcher also testified that she had seen or heard several arguments between appellant and decedent.

The government's witnesses included several friends of the decedent. Christine Mitchell, decedent's closest friend, testified that she, too, had spoken with Jeannette by telephone a short time before she died. Jeannette had complained of appellant's insistence that she stay in her room all day and not help maintain the apartment. Over objection, Annette Briscoe testified to Jeannette's lack of money following her marriage. This friend stated that on several occasions she had purchased lunch and gasoline for the decedent. Addis Asefa, who lived in the same apartment, testified regarding two altercations between the Gezmus a few weeks before the shooting, one of which culminated in appellant's throwing a book at decedent.

Over appellant's objection, the government was allowed to admit a certificate

---

* Associate Judge Fickling participated in the oral argument and consideration of this case, but died on March 6, 1977.

1. Appellant was originally charged in a two-count indictment with second-degree murder while armed (D.C.Code 1973, §§ 22–2403, –3202) and second-degree murder (id. § 22–2403). The jury acquitted on these counts, but returned a verdict of guilty of the lesser-included offense of involuntary manslaughter.

2. It also is contended that the trial court erred in refusing to strike, upon objection, certain allegedly prejudicial remarks made by two government witnesses. We have examined this contention and find it unpersuasive.

showing that no gun had been registered in appellant's name.

Appellant presented a defense of accident, based largely on his own testimony. He stated that approximately three weeks before the shooting, he had received a pistol as collateral for a loan. He testified that he decided to keep the gun because his wife's former boyfriend had threatened to kill both appellant and his wife.[3] On the morning of December 13, when he heard the bedroom door slam, appellant called out his wife's name. Thinking his wife was still in bed and remembering the threats of her ex-boyfriend, he reached for the gun, pointed it at the door, and it unexpectedly discharged.

Appellant requested that the trial court instruct the jury on self-defense. This request was denied.

## II

■ Contrary to appellant's initial assignment of error, the testimony of Grace Fletcher, Christine Mitchell, Annette Briscoe, and Addis Asefa was properly admitted into evidence. Extrajudicial statements are admissible to show the state of mind of the declarant if it is an issue in the case. *United States v. Brown*, 160 U.S.App.D.C. 190, 194, 490 F.2d 758, 762 (1973) (as amended Jan. 10, 1974). Moreover, there is no doubt that such evidence is admissible to show the state of mind of the victim-declarant. *Id.* at 197–98, 490 F.2d at 765–66; *see Derrickson v. State*, 321 A.2d 497, 503–04 (Del. 1974); *State v. Patriarca*, 112 R.I. 14, 308 A.2d 300, 319–20 (1973); *State v. Baldwin*, 47 N.J. 379, 221 A.2d 199, 206–07, *cert. denied*, 385 U.S. 980, 87 S.Ct. 527, 17 L.Ed.2d 442 (1966); *State v. Izzo*, 94 Ariz. 226, 383 P.2d 116, 118 (1963). *See generally* McCormick, Evidence § 294 (2d ed. 1972); 6 Wigmore, Evidence § 1790 (Chadbourn rev. 1976). It is fully recognized that where hostile emotions are to be proved in a case, the existence of the same emotion in the same person at another time is proper evidence. 2 Wigmore, Evidence § 396 (3d ed. 1940). Furthermore, the conduct, attitude, and feelings of the accused and the deceased toward each other may be shown in a murder case to establish motive, malice, or intent. *See generally id.* §§ 389–90, 395–97.

Cases in which the evidence shows instances of previous hostility between a husband and wife are sometimes treated as though they form a group by themselves. It has been noted that: "In marital homicide cases any fact or circumstance relating to ill-feeling; ill-treatment; jealousy; prior assaults; personal violence; threats, or any similar conduct or attitude by the husband toward the wife are relevant to show *motive* and *malice* in such crimes." *Romero v. People*, 170 Colo. 234, 460 P.2d 784, 788 (1969) (emphasis in original).

■ We agree with the government's position that the testimony was relevant. The statements presented went to the questions of malice and motive on the part of appellant. In addition, they revealed a woman involved in a troubled marriage, who was fearful of her husband and who made every effort to satisfy his demands. The evidence properly called into doubt appellant's claim that such a women would slam the bedroom door and then stand mute while he called out to her. The testimony was properly admitted into evidence.

■ Appellant further submits that even if the testimony were admissible, a limiting instruction was required, and the trial court's failure to so instruct, either sua sponte at the time of its admission or in the final charge to the jury, was reversible error. In light of appellant's failure to request such an instruction, and considering the implausibility of his defense at trial—which was in direct contrast to his original explanation of the incident—we cannot say that the omission denied appellant a fair trial.

---

**3.** On cross-examination, Christine Mitchell stated that Jeannette had heard about the threat. On redirect, she testified that Jeannette did not believe it would be carried out, and even had laughed at the thought.

## III

 Also assigned as error is the trial court's admission into evidence of a certificate stating that appellant had not registered the pistol used in the homicide. It is fundamental that evidence of one crime which is wholly independent of that charged may not be used to establish guilt. However, in the instant case there was no evidence of any other crime, but merely a certificate indicating that appellant had not registered the gun in his name.[4] Moreover, "[w]hen guilt is clearly established by competent evidence, error in the admission of other evidence . . . which does not affect the substantial rights of the accused does not call for the reversal of a conviction." *Starr v. United States*, 105 U.S.App. D.C. 91, 95, 264 F.2d 377, 381 (1958) (en banc), *cert. denied*, 359 U.S. 936, 79 S.Ct. 652, 3 L.Ed.2d 639 (1959), *quoting Guy v. United States*, 71 App.D.C. 89, 91–92, 107 F.2d 288, 290–91, *cert. denied*, 308 U.S. 618, 60 S.Ct. 296, 84 L.Ed. 516 (1939). *See* D.C. Code 1973, § 11–721(e). *See also Kotteakos v. United States*, 328 U.S. 750, 760–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Despite the basic irrelevance of the certificate, its admission was harmless.

## IV

 Finally, we find no error in the trial court's refusal to give the requested self-defense instruction, since the issue of self-defense was not sufficiently raised by the evidence. Self-defense is the use of reasonable force to repel a danger which a person reasonably believes may cause him imminent bodily harm. *United States v. Peterson*, 157 U.S.App.D.C. 219, 226–27, 483 F.2d 1222, 1229–30, *cert. denied*, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973); *Josey v. United States,* 77 U.S.App.D.C. 321, 135 F.2d 809 (1943). In the instant case, there was no evidence showing appellant's

belief of imminent danger. Moreover, appellant's defense of accidental death was totally inconsistent with a theory of self-defense. The trial court's rejection of the request for the self-defense instruction was proper.

The judgment of conviction on appeal is *Affirmed.*

---

4. Jeannette Gezmu was shot and killed in December 1974. This was before the enactment by the District of Columbia of the Firearms Control Regulations Act of 1975, D.C.Law 1–85, § 201 (enacted October 1, 1976) (23 D.C. Reg. 1091–1133, Aug. 10, 1976). Prior to its enactment, it was not unlawful to possess an unregistered firearm in one's own house. *See* D.C.Code 1973, § 22–3204.