**Bernice V. RINK, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 11862.**

District of Columbia Court of Appeals.

Argued April 13, 1978.

Decided June 21, 1978.

---

Sidney E. Rabb, Cleveland, Ohio, for appellant. Dorsey Evans was on the brief for appellant. David R. Taxin, Washington, D. C., also entered an appearance.

Richard C. Otto, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George and Mark H. Tuohey III, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. Michael W. Farrell, Asst. U. S. Atty., Washington, D. C., also entered an appearance.

Before GALLAGHER and NEBEKER, Associate Judges, and UGAST, Associate Judge, Superior Court of the District of Columbia.*

GALLAGHER, Associate Judge:

After a jury trial appellant was convicted of second degree murder while armed, D.C. Code 1973, §§ 22–2403, –3202. On appeal she raises five issues for our consideration, relating to: (1) the admission of evidence concerning appellant's prior threatening statements and acts against the decedent, Otis Hill; (2) the failure of the trial court to give an immediate and complete cautionary instruction sua sponte as to the use of that evidence; (3) the court's refusal to admit certain prior consistent statements of hers; (4) the court's denial of her mistrial motion after an assertedly improper question by the prosecutor; and (5) her right to a speedy trial. We affirm.

The deceased, Otis Hill, was shot and killed by appellant on June 1, 1975. It was the culmination of their long and turbulent relationship which had begun in the late 1960's. The two had lived together for several years and continued to live together up until either May or June 1975. Apparently adding to the friction in their relationship were the deceased's dates with another woman for some time prior to the fatal evening.

During the afternoon of June 1, 1975, appellant obtained a pistol from her so-called brother-in-law—purportedly because someone had tried to break into her apartment the previous night. Later in the evening she went to the home of the woman that Mr. Hill had been dating and found them together. A fight then ensued between the two women. Following this

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

fight, Mr. Hill left with Ms. Rink and, after a brief stop on the way, went to her apartment at 4232 4th Street, Southeast, where the homicide took place.

Appellant argues that the testimony of two prosecution witnesses concerning her prior threatening statements and acts towards the deceased was inadmissible for two reasons: (1) because it did not fall within any of the recognized exceptions of *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); and (2) even if the testimony falls within one of the exceptions, its probative value is outweighed by its prejudicial effect. The government responds that the testimony of the two witnesses bears on the issue of appellant's motive or intent—two of the recognized exceptions of *Drew, supra* at 16, 331 F.2d at 93, and that its probative value outweighs its potential prejudicial effect. Both arguments are premised on an imprecise characterization of the issue before us. The testimony does not deal so much with prior crimes or offenses committed by appellant—which is what *Drew* addressed—as it does with her prior threats and expressions of hostility—both in statements and conduct—directed towards the deceased.

The witness, Jane Floyd, was permitted to testify, over objection, that in February 1975, appellant had shown her a pistol and said she would "fix Otis" with it. Ms. Floyd also testified that appellant had told her on other occasions that "if she couldn't have him, then couldn't nobody have him." The other witness, John Jackson, was permitted to testify that in March 1975, when the deceased had not returned home from gambling, appellant showed the witness a pistol and "told me she was going to kill Otis. She was tired of him f— her over." He also testified that a week later, upon the deceased's return from another night of gambling, appellant pulled out the same pistol. He said she pointed the gun in Otis Hill's face and told him "if he didn't marry her, she was going to kill him." Mr. Jackson also testified that in early April 1975 appellant again showed him "the pistol she was going to shoot him with."

■ The court ruled the testimony admissible to show appellant's motive or intent to commit the offense charged. Appellant claims that motive or intent are not issues in this case because she admits having intended to shoot him, but only in self-defense. The prosecution, however, has the duty, as it presents its case, to establish each element of the offense charged. An element of second degree murder is malice aforethought. *Butler v. United States,* D.C.App., 322 A.2d 279, 280 n. * (1974).

> For second degree murder, the necessary malice is in part defined as "a condition of mind which prompts a person to do wilfully, that is, on purpose, without adequate provocation, justification, or excuse, a wrongful act whose foreseeable consequence is death or serious bodily injury to another." . . . In second degree murder, the state of mind is the critical determination to be made respecting existence of malice.

*Curry v. United States,* D.C.App., 322 A.2d 268, 271 (1974) (Nebeker, J., concurring). The testimony of which appellant complains is relevant to the issue of her state of mind—her intent—at the time of the killing. As set forth by one leading commentator:

> Evidence of a threat may . . . show the mental state with which the defendant acted, and establish the identity of the aggressor . . ..
>
> [E]vidence that the defendant possessed a gun and threatened to kill the deceased would, of course, be relevant.
>
> Evidence of a threat is relevant and admissible even though the threat is conditional in form. It is immaterial whether the condition is in such form that the victim can avoid the threatened harm by refraining from doing a specified act, or that the victim must do a specified act in order to avoid the harm. Thus, a conditional threat is admissible without regard to whether the victim did or did not do the act specified in the condition.

1 Torcia, Wharton's Criminal Evidence §§ 201–02, at 415–17 (13th ed. 1972) (footnotes omitted). Accordingly, we hold that

the testimony of both witnesses concerning appellant's threats and other expressions of hostility were relevant to determine her state of mind and admissible for that purpose.

As for appellant's conduct in pointing the pistol at the deceased in connection with her threats and other expressions of hostility, evidence of prior aggressive conduct of the defendant towards the deceased is relevant when there is a claim of self-defense. *United States v. Grover,* 158 U.S.App.D.C. 260, 263–64 & n. 7, 485 F.2d 1039, 1042–43 & n. 7 (1973); *United States v. Burks,* 152 U.S.App.D.C. 284, 286, 470 F.2d 432, 434 (1972); *see also Harris v. United States,* 124 U.S.App.D.C. 308, 364 F.2d 701 (1966). Such evidence is probative of: (1) the existence of appellant's malice towards the deceased;[1] (2) whether appellant was likely to be the aggressor in the encounter at issue;[2] and (3) whether appellant reasonably apprehended a danger of imminent, serious bodily harm from the deceased.[3] Furthermore, evidence concerning prior instances of hostility, prior assaults, and the like are particularly relevant in marital homicide cases. *Gezmu v. United States,* D.C.App., 375 A.2d 520, 522 (1977).[4] Consequently, we hold that the testimony was properly admitted into evidence. *Gezmu v. United States, supra.*

Appellant also complains that the trial court erred in failing to give a complete cautionary instruction immediately after the admission of the testimony about her prior threatening statements and conduct. At trial her counsel objected and requested the court to instruct the jury on the limited purposes for which the testimony was admitted. The prosecutor and trial court then discussed a procedure that had been used before, whereby the court would give a shortened cautionary instruction[5] to the jury at the close of each witness' testimony and a complete cautionary instruction at the end of the trial in its charge to the jury.[6] Her counsel not only did not object to this procedure, he acquiesced in it.

Due to appellant's failure to object to the instruction procedure adopted, she bears the heavy burden of demonstrating that the trial court committed plain error, *viz.,* error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." *Watts*

1. *United States v. Grover, supra,* 158 U.S.App. D.C. at 263–64 & n. 7, 485 F.2d at 1042–43 & n. 7.

2. *Id.*

3. *United States v. Burks, supra,* 152 U.S.App. D.C. at 286, 470 F.2d at 434.

4. Appellant claimed that she was the decedent's common-law wife, although there was some contradictory evidence. Regardless, their relationship apparently was close enough over a long period of time to render *Gezmu* applicable here.

5. This shortened instruction which it gave follows: "the testimony of this witness regarding any prior threats or any evidence of a gun are not charged in this indictment and in the instructions to you at the conclusion of all the evidence I will tell you how to treat that evidence."

6. At the close of the trial the court gave the full instruction, as follows:
 Evidence has been introduced that the Defendant, on prior occasions, had a gun and stated that she was going to use the gun against the deceased. This evidence was admitted solely for your consideration of whether it tends to show any one or more of the following: First of all, whether it shows that the Defendant had the intent to commit the offense with which she is now charged. Also consider whether it shows that the Defendant had any motive to commit the offense with which she is now charged. Finally, you may consider that evidence with respect to whether the Defendant did not commit the offense with which she is now charged through some accident or through some mistake.
 * * * * * *
 [W]ith respect to the evidence which you heard about the Defendant having a gun on prior occasions and the threats to use the gun against the decedent . . . [,] I told you the limited usage to which you could make of that evidence. You are further instructed that you are not required so to consider that evidence, and whether you do so or not is a matter within your exclusive province. You may not consider that evidence as tending to show in any other respect the Defendant's guilt of the offense with which she is now charged.

*v. United States,* D.C.App., 362 A.2d 706, 709 (1976) (en banc); *see also Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). We do not think she carried that burden here because the trial court did give a shortened cautionary instruction to the jury immediately after the witnesses' testimony and a full cautionary instruction at the end of the trial. *See Miles v. United States,* D.C.App., 374 A.2d 278, 283 (1977); *Curry v. United States, supra* at 270; *see also Gezmu v. United States, supra* at 522.[7]

Appellant also argues that the trial court erred in refusing to permit certain defense witnesses to testify as to her statements to them that she had been beaten on several occasions by the deceased. She claims that those statements are admissible to show her state of mind—her fear of the deceased. The government argues that the statements are inadmissible both because they constitute hearsay evidence and because they are prior consistent statements which cannot be introduced unless and until appellant's version of the events recounted in the statements is impeached.

 We do not doubt that appellant's state of mind—her reasonable apprehension of imminent, serious bodily harm—with reference to the deceased during the period up to and including the time of the killing is relevant to her claim of self-defense. Moreover, "[t]he state of mind exception to the hearsay rule allows the admission of extrajudicial statements to show the state of mind of the declarant at that time if that is at issue in the case." *United States v. Brown,* 160 U.S.App.D.C. 190, 194, 490 F.2d 758, 762 (1973) (as amended in 1974). The determination of whether to admit such evidence, however, is committed to the discretion of the trial court, which must balance its probative value against the dangers of prejudice, confusion, and delay. *Id.* at 195, 490 F.2d at 763.

 Here, appellant presented several witnesses who testified from personal knowledge as to several assaults on her by the deceased, as to her bodily condition after the deceased had beaten her on other occasions, and as to arguments between the two. Furthermore, appellant took the stand and had the opportunity to recount her history of violent turmoil with the deceased, as well as to relate, from personal knowledge, her revelation to these other witnesses that the deceased had beaten her up. The trial court in its ruling specifically left open the possibility that appellant could introduce the statements of her witnesses, to whom she had related the fact of the deceased's beatings, as prior consistent statements if the prosecution attempted to attack her testimony concerning the fact that the deceased had beaten her in the past. Even if the trial court erred in ruling these statements were inadmissible under the present state of mind exception to the hearsay rule, it would not have been an abuse of discretion to exclude them on account of delay or confusion, because the statements were merely cumulative of other evidence and were only admissible for a limited purpose. Finally, in light of all the other evidence presented by appellant on this issue, she cannot realistically claim any prejudice. *See Edmondson v. United States,* D.C.App., 346 A.2d 515 (1975); *see also United States v. Smith,* 160 U.S.App. D.C. 221, 224, 490 F.2d 789, 792 (1974).

 Appellant also argues that the trial court abused its discretion in refusing to grant her mistrial motion after the prosecutor asked her an assertedly improper question. The question was "[d]id you relive that moment [of the killing] when on June 4, 1975, three days after Otis Hill died, you had three friends draw up a document saying you were the common law wife for insurance purposes?" The trial court sustained the immediate objection of appellant's counsel and *no answer was ever giv-*

---

7. Appellant's reliance on *United States v. McClain,* 142 U.S.App.D.C. 213, 440 F.2d 241 (1971) is misplaced for two reasons. First, the holding in that case has been limited to its own facts. *Simmons v. United States,* D.C.App.,

364 A.2d 813, 816 (1976), *citing United States v. Bobbitt,* 146 U.S.App.D.C. 224, 450 F.2d 685 (1971). Second, in *McClain,* unlike here, no cautionary instructions were ever given during the trial on the use of the questioned testimony.

en. Appellant them moved for a mistrial, which was denied, but did not seek to have the jury immediately instructed to disregard the question.[8]

The decision to grant or deny a mistrial motion is committed to the sound discretion of the trial court. *Hammond v. United States,* D.C.App., 345 A.2d 140, 141 (1975). The trial court is ordinarily in a better position than we are to evaluate the potential for prejudice to the defendant from the prosecutor's question. We agree with the trial court that the potential for prejudice from the question outweighed whatever relevance it had, for impeachment purposes or otherwise. We do not think, however, that the question alone was so prejudicial to the fairness of appellant's trial that the court abused its discretion in refusing to grant her motion for a mistrial.[9] Furthermore, any potential prejudice from this question was largely removed by the court's instructions at the end of trial.[10]

■ Appellant's final claim is that she was denied her constitutional right to a speedy trial. Analyzed under the four-pronged test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we disagree. The first two factors are the length of and the reasons for the delay. Eighteen months elapsed between her arrest and the time of her trial.[11] Of these

eighteen months, appellant was responsible for two and one-half months, while the government was responsible for the remainder. None of this remainder was deliberate delay by the government, but was consumed mostly in "neutral" delays—resulting from grand jury proceedings and other institutional impediments—which are to be "weighted less heavily" against the government. *United States v. Perkins,* D.C.App., 374 A.2d 882, 884 (1977).

The third factor is the timely assertion of her speedy trial right. Although the Supreme Court rejected "the rule that a defendant who fails to demand a speedy trial forever waives his right . . . [t]his does not mean, however, that the defendant has no responsibility to assert his right." *Barker v. Wingo, supra,* 407 U.S. at 528, 92 S.Ct. at 2191 (footnote omitted). The Court continued to explain that

> The defendant's assertion of his speedy trial right, then, is entitled to *strong* evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that [the] *failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*

*Id.* at 531–32, 92 S.Ct. at 2192 (emphasis added). Here appellant Rink asserts her

---

8. A cautionary instruction along this line would have been well advised and this course is commended in such situations.

9. The trial court should avoid granting a mistrial whenever possible, unless there is a clear manifest necessity. *United States v. Anderson,* 165 U.S.App.D.C. 390, 403, 509 F.2d 312, 325 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975).

10. The court gave the following instructions: You may consider only the evidence properly admitted in the case. As far as this case is concerned, the evidence consists of the sworn testimony of witnesses from the witness stand and the exhibits which have been received into evidence. Statements and arguments of counsel are not evidence . ..

 It is the duty of counsel to object when the other side offers testimony or other evidence which counsel believes is not properly admissible. If during the course of the trial the court sustained an objection by one counsel

to a question asked by the other—I have on a number of occasions—you should disregard the question and you must not speculate as to what the answer would have been to that question.

11. According to *Branch v. United States,* D.C.App., 372 A.2d 998 (1977), a delay of a year or more gives prima facie merit to the claim of an accused that his speedy trial right has been denied. The delay that can be tolerated for a serious and complex charge, however, is considerably more than for a simple misdemeanor. *See Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. 2182; *Branch v. United States, supra* at 1000 & n. 5. Furthermore, we note that since the decision in *Branch,* delays of over a year have still been frequently upheld. *E. g., Bowman v. United States,* 385 A.2d 28 (1978) (almost thirteen months); *Reed v. United States, supra* (about fifteen months); *Chatman v. United States,* D.C.App., 377 A.2d 1155 (1977) (sixteen months).

right for the first time *on appeal* —a factor which must, absent extraordinary circumstances, weigh heavily against her claim.[12]

The fourth factor in *Barker v. Wingo, supra,* is the prejudice to the accused resulting from the delay.[13] Appellant was not incarcerated, though she had the anxiety of having this case hanging over her for a long time. She alleges generally that her defense was prejudiced by the natural fading of the memories of her witnesses, but she does not cite any specific memory lapses of individual witnesses nor indicate any specific way in which her defense was impaired by such alleged lapses.

Upon balancing all these factors, particularly the length of the delay against the lack of deliberateness in causing that delay, the failure to assert her speedy trial right in the trial court, and the absence of any allegation of concrete instances of prejudice, we conclude that she was not denied her right to a speedy trial.

*Affirmed.*

12. Nothing in the Supreme Court's recent opinion in *United States v. MacDonald,* —— U.S. ——, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) affects our consideration of this factor, or any of the others. Although in that decision the Court said that "it is only after trial that that claim [the denial of the right to a speedy trial] may fairly be assessed", *id.* at 1552, the Court was addressing itself to the propriety and desirability of a defendant raising his speedy trial claim both pretrial and immediately after trial—the latter being the time at which the defendant may be better able to articulate specific grounds of prejudice due to the preceding delays.

13. We recognize that *Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial . . . ." *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973). This factor is still significant to the overall balancing process required by *Barker v. Wingo, supra.*