Opinion for the court by Associate Judge Easterly.
Concurring opinion by Senior Judge Ferren at page 849.
Dissenting opinion by Associate Judge Thompson at page 855.
Easterly, Associate Judge:
Tameka Parker appeals her conviction, following a bench trial, for simple assault.[1] She argues that the evidence was insufficient to disprove her claim of self-defense. The trial court determined that Ms. Parker reasonably believed that she was in imminent danger of bodily harm when Frederick Powell and members of his family accosted her in front of her home and Mr. Powell threatened and then spit on her. Nonetheless, the trial court rejected *839 Ms. Parker’s claim that she was acting in self-defense when, in response to Mr. Powell spitting on her, she spit back on him. The trial court determined that Ms. Parker, although actually and reasonably afraid of Mr. Powell, had acted with a retaliatory motive that defeated her claim of self-defense.
We question whether the record evidence supports the trial court’s determination that Ms. Parker’s motivation was purely retributive, but ultimately conclude that the trial court erred as a matter of law in conducting a separate inquiry into Ms. Parker’s motive. Under the District’s long-standing common law test for self-defense, captured in our standard jury instructions, whether the government has disproved a claim of self-defense turns on two questions: (1) whether a defendant reasonably believed that she was in imminent danger of bodily harm (an inquiry that may be informed, among other things, by motive evidence presented by the government); and (2) if so, whether the force used was excessive. Motive is not separately and additionally considered as a basis for disproving a claim of self-defense. In this ease, the trial court found that Ms. Parker’s belief she was in imminent danger was reasonable and there was never an argument that her act of spitting on Mr. Powell constituted excessive force. As there was no basis for the trial court to reject Ms. Parker’s claim of self-defense, we reverse.
I. Facts[2]
Early one evening in June 2014, Ms. Parker walked out of her home where she lived with her three children. She was about to get into a friend’s car, when she heard Mr. Powell[3] yell from across the street that he “should go over and smack the shit out of that bitch.” When Ms. Parker asked to whom he was speaking, Mr. Powell crossed the street and came onto her property, positioned himself so that he and Ms. Parker were face-to-face, and said, “bitch, you.” Mr. Powell’s “aggressive]” approach indicated to Ms. Parker that “he was trying to fight [her],” and Mr. Powell asked her “do you want that smoke,” a question Ms. Parker understood as a threat to shoot her.
Mr. Powell’s mother crossed the street with him, and several of his brothers joined them on Ms. Parker’s property; the family surrounded her friend’s car and yelled insults at Ms. Parker. They called her a “dirty bitch” and accused her of being “hot,” ie., “working with the police.” “[T]here were a lot of them,” and Ms. Parker “fear[ed] for [her] life.”.
When he was less than two feet away from her, Mr. Powell spit in her face. Ms. Parker was “really was scared” once Mr. Powell spit on her, because she “didn’t know what he was going to do next.” She spit back.[4]
At about that time, unbeknownst to Ms. Parker,[5] a police officer arrived. While sitting in his car, the officer saw Mr. Powell face-to-face with Ms. Parker, surrounded *840 by approximately ten people,[6] all standing near a ear and yelling at each other. The officer could not hear what they were saying, but he saw Ms. Parker spit on Mr. Powell. When he spoke to her at the scene, she explained (because the officer had not seen the entire encounter and in particular, had not seen Mr. Powell spit on Ms. Parker) “that she wouldn’t just spit on him for no reason, that he spit on her first.” The officer then arrested Ms. Parker for simple assault.
At trial, Mr. Powell did not testify and the government called only one witness, the arresting officer. Ms. Parker testified on her own behalf. Ms. Parker conceded that she spit on Mr. Powell but claimed she was acting in self-defense. On direct and cross-examination, Ms. Parker repeatedly testified that she was afraid of Mr. Powell. On direct, Ms. Parker was asked what she believed was going to happen at the time she spat back at Mr. Powell and she said, “I thought he was going to hit me, honestly that was the next thing. I was fearing for my life. ... I am scared for my life, like I didn’t know what they w[ere] going to do.” On cross-examination, she specifically denied being angry: “I wasn’t angry. I was scared for my life. ... I was more scared than anything.” In response to a followup question from the court — “Why is it that you spit in [Mr. Powell’s] face?” — she explained, as she had to the police officer, that she had spit on Mr. Powell “[b]ecause he came on my property and ... spit on me first.” Finally, on redirect, Ms. Parker once again explained why she had spit on Mr. Powell:
It was just that he spit in my face and I felt scared with the way they approached me that day. They approached me in a scary situation. I had a lot of people approach me at one time and I really did not know what I did or what I did wrong for him to say he was going to smack me and walk on to my property and then to spit in my face.
The government argued in closing that it had carried its burden to show that “the defendant was not in fear of imminent bodily harm which is the standard of self-defense.” Instead the government asserted that the evidence established that Ms. Parker was “very angry,” “indignant,” and “offended by what she states that the complainant did to her.” The government further asserted that Ms. Parker had not “expressed a fear of imminent bodily injury. What she has expressed is being angry at this complainant and not liking this complainant.” The government then highlighted Ms. Parker’s testimony that she had spit on Mr. Powell because he spit on her. The defense countered in its closing that there was “absolutely no reason or evidence to believe that Ms. Parker wasn’t afraid and, in fact, it is to the contrary.” “[T]here is evidence and there is testimony that she was actually afraid ... and that she had reasonable grounds for that belief.”
The trial court, after determining that Ms. Parker’s spitting was an assaultive act, rejected her claim of self-defense, but not on the ground urged by the government. Preliminarily, the court “instruct[ed] [it]self” on the law of self-defense and acknowledged that “every person has the right to use a reasonable amount of force in self-defense if one, she actually believes she is in imminent danger of bodily harm and if two, she has reasonable grounds for that belief.”[7] The court then found, con *841 trary to the government’s argument, that Ms. Parker did reasonably believe herself to be in such danger:
I conclude based on this record that Ms. Parker reasonably believed that she was in imminent danger of bodily harm. I think it is a very rich record with respect to her belief of imminent bodily harm and the reasonableness of that belief. She testified entirely credibly with no impeachment at all that amount- ■ ed to anything except a minor difference in recollection about exactly what the spacing of the complaining witness and Ms. Parker was, that she was walking out of her door to get into her friend’s car and as she was doing nothing more than walking to a car, Mr. Powell who was sitting nearby on his family’s porch said loudly enough for her to hear, I should go over there and smack the shit out of that bitch, and he then approached her walking across the street like he was going to fight her and he was backed up by his mother who was also saying aggressive things towards Ms. Parker. They were saying such things as, bitch, you hot, which meant that she was working with the police and, you want that smoke, which was a threat to shoot and he got right up in her face and she said, who you talking to, and he said, bitch, you, and she said, whatever, little boy, get out of my face, at which point he spit on her and a half a dozen members of his family were also approaching her and backing him up.
The court also “credit[ed] Ms. Parker’s testimony that she didn’t realize that Officer Bradley was there” and thus did not appreciate she could have asked him for help:
It is perfectly believable to me that with people shouting at each other, with her attention focused on what is going on and having been spit on, on having been threatened, on the mother coming across the street and yelling at her also on the back up of the relatives, that she is looking at all of that and everything else that is occurring is somewhere in the background noise and not quite registering for her. So, I don’t think that it detracts from her credibility that the officer was there and she could easily have turned to the officer and said, look what he did and then he would be prosecuted before me for assault instead of her. I accept Ms. Parker’s explanation that she was afraid even though she didn’t get in the car. It is her judgment whether she is at more risk in a confined space than she. is out in the open. She had family members to access to her as long as she was out in the open. I am not going to question that judgment and I don’t think it detracts from her testimony that she actually did fear that she was in imminent danger of bodily harm that she didn’t get into the car. That is a judgment that you make at the time and it was for her to make at that time.
Although the court found that Ms. Parker reasonably believed herself to be endangered by Mr.-Powell and his entourage, the court nonetheless concluded that Ms. Parker’s self-defense claim failed because of what it perceived to be Ms. Parker’s motive in responding to Mr. Powell:
It is [ejminently reasonable that with those threats and that expressed motivation and that backup she would feel herself in imminent danger and I find that she did, but in order for self-defense to apply she has to use a reasonable amount of force in self-defense.[8] Using *842 a reasonable amount of force is [not[9]] because she is angry or indignant or outraged or because of injustice, if somebody spits in your face[,] which is what he did, that person deserves to be spit on and should expect to be spit on, [but] that is not self-defense. That is spitting[,] but not for purposes of self-defense[,] and the government has proven on this record that the spitting occurred not for reasons of self-defense but for those other reasons. The government correctly argues that every time Ms. Parker is asked, why did you spit on him, the immediate answer is, because he spit on me, and that was said directly on the scene to the police officer. The answer to the same effect was indeed given to the prosecutor, I spit on him because he spit on me, and I directly asked, why did you spit on him. I spit in his face because he came on my property and he spit on me first and there is street justice in that. That is fíne in a sense, in a fairness sense and I will take account of sentencing time but it is not fine when it comes to the law of the District of Columbia because what could have been expected to happen next if that police officer had not been there was that Mr. Powell backed up by his family and surrounding Ms. Parker the way he was and having just been spat on would have made good on some of those threats, not the shoot you threat but the beat the [shit] part of the threat. They had the numbers and they had the anger and they had their expressed motivation.
The court concluded that “[f]or all th[e]se reasons ... the government ha[d] proved beyond a reasonable doubt that Ms. Parker committed the offense of simple assault and did not spit on Mr. Powell as an act of self-defense.”
II. Analysis
When a defendant “presentís] any evidence that she acted in self-defense,” the government assumes the burden of proving, beyond a reasonable doubt, that she did not. See Williams (Shirley) v. United States, 90 A.3d 1124, 1128 (D.C. 2014). In this ease, Ms. Parker argues that the government failed to present sufficient evidence that she did not act in self-defense when she spit on Mr. Powell. We review sufficiency of the evidence claims de novo. High v. United States, 128 A.3d 1017, 1020 (D.C. 2015),[10] In so doing, “we consider all the evidence in the light most favorable to the government, according deference to the fact-finder to weigh the evidence, determine the credibility of the witnesses, and draw all justifiable inferences of fact.” Williams (Furl) v. United States, 113 A.3d 554, 560 (D.C. 2015). If we find “no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt,” we must reverse. Id.
Here, the trial court credited Ms. Parker’s testimony that she “was afraid,” and determined that she subjectively and reasonably believed that she was in imminent danger of bodily harm from Mr. Pow *843 ell[11] after he and his family encircled, insulted, and threatened her, and he spit on her. Nevertheless, the court concluded the government had presented sufficient evidence to prove beyond a reasonable doubt that Ms. Parker was not acting in self-defense because it somehow discerned that Ms. Parker’s fear and reasonable belief that she was in imminent danger did not motivate her to spit on Mr. Powell. Instead the court detected from the evidence that Ms. Parker was motivated by “ang[er], indignation] or outrage[]” — a desire to impose what the court called “street justice.”
As a preliminary matter, we question whether the record supports the court’s finding that Ms. Parker acted out of a purely retributive motive. See High, 128 A.3d at 1020 (noting that we defer to the trial court’s credibility determinations and findings of fact from a bench trial unless they are “plainly wrong or without evidence to support [them]” (alteration in original)). The government’s only witness, the arresting officer, could not testify to much more than the fact that he had seen Ms. Parker spit on Mr. Powell, and he did not attribute any emotion to her, much less describe her as being angry or indignant. For her part, Ms. Parker never indicated that she had the “street justice” motive that the court imputed to her. Moreover, she denied that she was angry, and she was not impeached on this point. In short, the record evidence was that Ms. Parker “was scared for her life” — the reasonable inference being that she acted upon her reasonable belief that she was in imminent danger.
The trial court’s contrary motive determination appears to be based entirely on Ms. Parker’s initial explanation to the police officer and her subsequent testimony in court that she spit on Mr. Powell because “he spit on me first.”[12] The court inferred from this explanation that, notwithstanding her credited testimony to the contrary, Ms. Parker was “angry or indignant or outraged” and was motivated to act solely based on these emotions.
We are doubtful that Ms. Parker’s admissions that her action was responsive to Mr. Powell’s initial assault can carry the retributive meaning the court ascribed to them. It seems more likely that her statement to the police officer — who arrived in the midst of the incident and whom Ms. Parker did not see until he approached her to place her under arrest — was made to ensure that the officer understood the full sequence of events and, in particular, that she was not the first aggressor. Similarly, her response to the court’s “why” inquiry, taken in context of her previous and subsequent expressions of fear, seems more susceptible to a benign interpretation that is entirely congruent with her claim of self-defense: to repel the *844 reasonably perceived danger, she fought fire with fire; she matched one spitting assault (Mr. Powell’s) with another (hers) to communicate that she would give as good as she got and that Mr. Powell should leave her alone. Furthermore, when considered in the context of her fully'credited testimony, in which she unambiguously related her fear of Mr. Powell, it is difficult if not impossible to accept that Ms. Parker’s he-spit-on-me-first statement alone establishes, beyond a reasonable doubt, that Ms. Parker was motivated solely by a desire to impose “street justice.”[13] See Williams (Shirley), 90 A.3d at 1129 n.6 (holding that the defendant’s “ambiguous statement d[id] not tip the balance of the weight of the evidence to the extent that it dispel[led] any reasonable doubt” that she was acting in self-defense).[14] Instead, at most, the evidence supports only a determination that Ms. Parker was motivated to spit on Mr. Powell by a mixture of fear and anger.[15]
We need not decide whether the trial court made a factfinding error, however, because the trial court’s focus on motive begs a more fundamental question of law: if the government fails to disprove that a defendant reasonably believed that she was in imminent danger of bodily harm, *845 can it still carry its burden to rebut a claim of self-defense by showing that there was another motive guiding the defendant’s action? For the reasons discussed below, we conclude that, under this court’s longstanding articulation of the two-part test for the defense of self-defense captured in our standard jury instructions, it cannot.
“The essence of the self-defense situation is a reasonable and bona fide belief of the imminence of ... bodily harm.”[16] Kinard v. United States, 96 F.2d 522, 526 (D.C. Cir. 1938).[17] Thus, in numerous cases, this court has acknowledged that when a claim of self-defense is raised, the threshold question for the fact finder is whether the government has disproved that the “appellant actually and reasonably believed that [s]he was in imminent danger of bodily harm.” Higgenbottom v. United States, 923 A.2d 891, 900 (D.C. 2007).[18] And our standard jury instruction on self-defense directs that:
Every person has the right to use a reasonable amount of force in self-defense if (1) s/he actually believes s/he is in imminent danger of bodily harm and if (2) s/he has reasonable grounds for that belief. The question is not whether looking back on the incident you believe that the use of force was necessary. The question is whether [name of the defendant], under the circumstances as they appeared to him/her at the time of the incident, actually believed s/he was in imminent danger of bodily harm, and could reasonably hold that belief.
Criminal Jury Instructions for the District of Columbia, No. 9.500 (5th ed. rev. 2014) (“Self Defense — General Considerations”).[19]
If there is evidence that the defendant actually and reasonably believed herself to be in imminent danger of bodily harm — i.e., if the government cannot prove beyond a reasonable doubt that the defendant did not have such a belief— the inquiry proceeds to the amount of force employed. A defendant may use “only reasonable force to repel the perceived attack.” Higgenbottom, 923 A.2d at 900. Or, rephrased in the context of the government’s burden of proof, “[i]n a situation where the evidence establishes that self-defense would otherwise be justified,” *846 the government can rebut a self-defense claim only if it proves that a defendant used “excessive force.” Williams, 90 A.3d at 1128. But distinguishing what constitutes excessive force from a “reasonable amount of force” is not a wholly objective inquiry; the factfinder must take into account evidence of the defendant’s mental state under the circumstances. See Fersner v. United States, 482 A.2d 387, 391-92 (D.C. 1984) (“[T]he victim’s subjective perceptions are the prime determinant of the right to use force — and the degree of force required — in self-defense, subject only to the constraint that those perceptions be reasonable under the circumstances.”).[20]
[T]he claim of self-defense is not necessarily defeated if, for example, more knife blows than would have seemed necessary in cold blood are struck in the heat of passion generated by the unsought altercation. A belief which may be unreasonable in cold blood may be actually and reasonably entertained in the heat of passion.
Inge v. United States, 356 F.2d 345, 348 (D.C. Cir. 1966).[21] The question is thus whether the defendant’s use of force is “a proportionate reaction to the threat that [s]he perceived” while in the heat of the moment. Ewell, 72 A.3d at 130. Again, this is reflected in the standard jury instruction entitled “Amount of Force Permissible,” which explains that a defendant confronting nondeadly force[22] may employ “a reasonable amount of force” as informed by her subjective assessment of the circumstances. The instructions first state that “[a] person may use an am,ount of force which, at the time of the incident, s/he actually and reasonably believes is necessary to protect himself/herself from imminent bodily harm.” Criminal Jury Instructions for the District of Columbia, No. 9.501.A (emphases added). The instructions further provide that “[a] person acting in the heat of passion, ... does not necessarily lose [her] claim of self-defense by using greater force than would seem necessary to a calm mind. In the heat of passion, a person may actually and reasonably believe something that seems unreasonable to a calm mind.” Criminal Jury Instructions for the District of Columbia, No. 9.501. C.
Under this construct — where the first inquiry is whether a defendant actually and reasonably believed she was in imminent danger of bodily harm and the second inquiry is whether, taking this belief into account, she employed excessive force — motive is not an additional, separate consideration.[23] If the government has not disproved that a defendant actually and reasonably believed she was in imminent danger of bodily harm, we accept that *847 she acted out of that belief.[24] See Garibay v. United States, 634 A.2d 946, 948 (D.C. 1993) (explaining the binary motive inquiry by juxtaposing two possible outcomes: “a self-defense claim raises the issue of whether the defendant was acting out of an actual and reasonable fear of imminent bodily harm, or whether, instead, the defendant had some other motive and was, in fact, the aggressor”); see also Rink v. United States, 388 A.2d 52, 56 (D.C. 1978) (holding that motive evidence is admissible to address “whether appellant reasonably apprehended a danger of imminent, serious bodily harm from the deceased”); Flores v. United States, 698 A.2d 474, 482-83 (D.C. 1997) (citing Garibay to allow evidence of prior violent acts to show that defendant was the first aggressor).[25] This construct is reflected in our cases assessing sufficiency of the evidence challenges: claims of self-defense rise or fall on deter *848 minations of whether the defendant reasonably believed herself to be in imminent danger of bodily harm or used excessive force.[26]
To our knowledge, this court has never held that, despite evidence that the defendant actually and reasonably believed she was in imminent danger of bodily harm, her self-defense claim had been adequately disproved on the ground that the defendant had somehow set aside her belief and acted purely out of a different motive— e.g., anger or a desire for retribution. The government does not cite to any such case.[27] And notably, neither does our dissenting colleague.[28]
In Ms. Parker’s case, the trial court as the factfinder concluded that Ms. Parker *849 actually and reasonably believed she was in imminent danger of bodily harm from Mr. Powell. At that point the only question left for the trial court was whether Ms. Parker had employed excessive force. Ms. Parker obviously did not use more force than was reasonable under the circumstances.[29] Thus the court should have determined that Ms. Parker acted in self-defense and acquitted her of assault.
But instead of acquitting Ms. Parker, the trial court appeared to misuse the inquiry into whether Ms. Parker had used “a reasonable amount of force,” to circle back to Ms. Parker’s motive in responding Mr. Powell’s assault. It is correct that, in order for a factfinder to determine if a defendant employed excessive force, consideration should be given to whether a defendant subjectively perceived a need to employ such force to repel the threat. As explained above, however, this consideration of the defendant’s subjective perceptions is meant to expand the boundaries of what constitutes reasonable force, “by takfing] into account that the defendant was acting in the ‘heat of conflict.’ ” Williams, 90 A.3d at 1128. It is not meant to authorize a factfinder to separately assess a defendant’s motive in responding to a reasonably perceived threat to her safety.[30]
Accordingly, we reaffirm that, when self-defense is raised, the proper inquiry with respect to a defendant’s mental state (which motive evidence may inform) is whether she subjectively (and reasonably) believed that she was in imminent danger of bodily harm. The government bears the burden to prove that a defendant did not hold such a belief. Where, as here, the government fails to meet that burden — i.e., where it cannot disprove that the defendant subjectively and reasonably believed she was in imminent danger of bodily harm — and also fails to show that the defendant employed excessive force, the defendant must prevail on her self-defense claim.
III. Conclusion
For the foregoing reasons, we reverse Ms. Parker’s conviction for simple assault.

So ordered.

*850 Concurring opinion by Senior Judge John M. Ferren.
Dissenting opinion by Associate Judge Phyllis D. Thompson.

. D.C. Code § 22-404 (a)(1) (2016 Supp.).

. For the narrative of the incident, we primarily rely on Ms. Parker’s testimony which the trial court credited in all material respects.

. Ms. Parker had no personal relationship with Mr. Powell, but, more than a year prior to this incident, he and Ms. Parker’s daughter had been romantically involved.

. She also threw an unopened can of soda into "the middle of the street,” without hitting Mr. Powell. She explained, "I didn't throw it at him exactly. I just threw it .... I don't know, I was scared.”

. Ms. Parker testified thatshe did not realize a police officer was on the scene until he walked up to her.

. According to the officer, by this time "[h]is family was out. Her family was out .... ”

. The court appeared to be reading verbatim from the standard jury instruction on "Self-Defense — General Considerations.” Criminal *841 Jury Instructions for the District of Columbia, No. 9.500 (5th ed. rev. 2014).

. Here, it appears the court was referring to the standard jury instruction on “Self-Defense — Amount of Force Permissible.” Crimi *842 nal Jury Instructions for the District of Columbia, No. 9.501. But the court did not read from this instruction verbatim, and thus misapplied it to the facts of this case. See infra p. 845.

. It appears that either the court reporter failed to transcribe the word “not,” or that the trial court misspoke.

. Sufficiency claims implicate the Due Process Clause, which requires that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof — defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.” Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct 2781, 61 L.Ed.2d 560 (1979).

. The trial court and Ms. Parker herself described her response to her encounter with Mr. Powell in terms of fear. To clarify, fear is an emotion that is presumably often experienced by a person who has a right to defend herself. And evidence of fear will support a conclusion that that person actually and reasonably believed that she was in imminent danger of bodily harm. But if a person is confident in her ability to defend herself and does not feel afraid when she is placed in a situation where she actually and reasonably believes that she is in imminent danger of bodily harm, she would still have a right to act to prevent that harm and later claim self-defense.

. The government had highlighted this testimony for the court, but for the distinct purpose of proving that Ms. Parker did not subjectively believe she was in imminent danger of bodily harm. Although the government now seeks to defend the trial court’s separate motive analysis, it did not seek to rebut Ms. Parker’s claim of self-defense on this basis at trial.

. Our dissenting colleague asserts that the court’s statements "reflect a recognition that what was missing each time from appellant's explanation of why she spit on [Mr.] Powell was any statement to the effect that she spit on him in an effort to protect herself from harm.” Post, at 857 (dissenting opinion). But Ms. Parker repeatedly made it clear that she was afraid of Mr. Powell. And it was not Ms. Parker's burden to prove that she acted in self-defense; it was the government’s burden to prove that she did not.

. In Williams, we held that a defendant’s statement while holding a knife — “You think I’m crazy? I’m going to show you crazy”— was subject to at least "two reasonable interpretations”: (1) she was "letting others know whom she felt were out to do her harm that she was willing to defend herself, even so far as using the knife”; or (2) she was making a threat. Id. at 1129 n.6. And thus we held that the statement could not be relied upon by the government to carry its burden to disprove the defendant’s self-defense claim beyond a reasonable doubt. Id.

. Evidence that a defendant has mixed emotions, however, will not defeat a claim of self-defense. Again, the proper inquiry is whether the defendant believed she was in imminent danger, not whether she was or was not fearful. See supra note 11. Moreover, as humans rarely experience one emotion at a time, it is only to be expected that, in a situation where a person might need to act in self-defense, she will experience some mix of fear and anger or indignation or vindictiveness. Cf. Brown v. United States, 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961 (1921) (noting that as the common law of self-defense has evolved over time, "it has tended in the direction of rules consistent with human nature”). Thus, if the government could carry its burden to disprove a claim of self-defense simply by establishing that a defendant who actually and reasonably believed she was in imminent danger also experienced other emotions or had mixed motives, self-defense claims would be severely curtailed, if not eliminated entirely. See People v. Nguyen, 61 Cal.4th 1015, 191 Cal.Rptr.3d 182, 354 P.3d 90, 113 (2015) ("[I]t would be unreasonable to require an absence of any feeling other than fear, before [use of force] could be considered justifiable [self-defense].”); State v. Adviento, 319 P.3d 1131, 1157 (Haw. 2014) (observing that "actions taken in self-defense may indeed be committed while the defendant is subject to a certain degree of terror, resentment, rage or anger”); Wayne R. LaFave, Substantive Criminal Law § 10.4 (c) (2d ed.) (noting that a defendant acting in self-defense "does not lose the defense because [s]he acts with some less admirable motive in addition to that of defending [herjself,” as in a situation where the defendant also "us[es] force upon h[er] adversary because [s]he hates him”). In short, the government will prevail over a claim of self-defense only when it proves that the defendant did not reasonably believe that she was in imminent danger of bodily harm, see infra p. 863 — not when it proves the defendant reasonably experienced other emotions.

. The requisite level of reasonably perceived danger is different, depending on whether the defendant employed deadly or nondeadly force: "where an accused, claiming self-defense, uses deadly force, he must — at the time of the incident — actually believe and reasonably believe that he is in imminent peril of death or serious bodily harm; whereas one utilizing nondeadly force must show that he reasonably believed that [some] harm was imminent.” Ewell v. United States, 72 A.3d 127, 131 (D.C. 2013).

. Decisions of the D.C. Circuit prior to February 1, 1971, are binding on this court per M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971).

. See also Kittle v. United States, 65 A.3d 1144, 1158 (D.C. 2013) (“To invoke self-defense, there must be some evidence that; ‘(1) [appellant] actually believed he was in imminent danger of bodily harm, and (2) he had reasonable grounds for that belief.’") (quoting Guillard v. United States, 596 A.2d 60, 63 (D.C. 1991)); Snell v. United States, 754 A.2d 289, 290 (D.C. 2000) ("Reasonable force may be used in self-defense if the actor reasonably believes that he or she is in imminent danger of bodily harm.”); McPhaul v. United States, 452 A.2d 371, 374 & n.2 (D.C. 1982) (upholding the instructions that "emphasized the general concept of the self-defense doctrine” and told the jury, inter alia, that the defendant had a right to act in self-defense if "one, he actually believes he is in imminent danger of bodily harm; and, two, if he has reasonable grounds for that belief”).

.Nearly identical standard instructions have been employed in the District since 1972. See Criminal Jury Instructions for the District of Columbia, No. 5.13 (2d ed, 1972) (“Self Defense — General Considerations”).

, See id. at 391 ("The right of self-defense, and especially the degree of force the victim is permitted to use to prevent bodily harm, is premised substantially on the victim’s own reasonable perceptions of what is happening.”).

. See also Brown, 256 U.S. at 343, 41 S.Ct. 501 (“Detached reflection cannot be demanded in the presence of an uplifted knife.”); Williams (Shirley), 90 A.3d at 1128 ("[T]he fact-finder must take into account that the defendant was acting in the ‘heat of the conflict.’ ”) (quoting Brown, 256 U.S. at 344, 41 S.Ct. 501); Perry v. United States, 422 F.2d 697, 698 (D.C. Cir. 1969) (citing Inge and reaffirming that the fact-finder must "consider ... whether the defender in the heat of an attack actually entertained a belief which would be unreasonable in one acting in cold blood”).

. There is an analogous instruction for use of deadly force. Criminal Jury Instructions for the District of Columbia, No. 9.501.B,

. Our colleague in dissent faults us for relying on "truncated discussions of the law of self-defense,” post, at 860 (dissenting opinion), but these discussions capture the operative core of our test for self-defense and fully align with our standard jury instructions.
By contrast, the dissent seeks to create a new, additional requirement that a defendant *847 must have "believed that her action ... was necessary to save herself.” Post, at 855 (dissenting opinion) (brackets omitted) (emphasis added); see also id. at 49-50 & n.7, 60-61. But the dissent's separate subjective "necessity” test has no support in the decisions of this court. To be sure, the admonition in Holmes v. United States, 11 F.2d 569, 574 (D.C. Cir, 1926), that "the law of self-defense is a law of necessity,” has been often quoted by this court; but it does not authorize a distinct inquiry into a defendant’s subjective assessment of the necessity or likely effectiveness of her actions. Rather, in Holmes (a murder case), the court concluded that the evidence was sufficient to allow the jury to determine that it was not "necessary” for the defendant to employ deadly force in self-defense, either because the "appellant did not believe himself in imminent danger when he handed a weapon to [his co-defendant], requesting him to use it,” or because his use of force to resist a lawful arrest was excessive. Id.
All of the cases cited by our dissenting colleague that refer to "necessity” support this understanding of the law of self-defense. They discuss necessity either in the context of step one of our self-defense test, examining whether the defendant reasonably believed he was in imminent danger of bodily harm, see, e.g., Edwards v. United States, 721 A.2d 938, 941, 943 (D.C. 1998) (cited post, at 855 n.1 (dissenting opinion)), or in the context of step two of our self-defense test, examining whether the defendant employed excessive force, see Travers v. United States, 124 A.3d 634, 639 (2015); Higgenbottom, 923 A.2d at 900-01; McPhaul, 452 A,2d at 373 n.1. In addition, the dissent cites one case, Potter v. United States, 534 A.2d 943, 946 (D.C. 1987) (cited post, at 859 (dissenting opinion)), that does not reference "necessity” at all and conducts a step one analysis to conclude that a self-defense instruction should have been given, because a jury could have found that defendant "believe[d], reasonably, that he had to throw a brick to fend off imminent bodily harm.” The dissent cannot point to a single case where this court has indicated — much less held — that, even where a defendant actually and reasonably believed she was in imminent danger of bodily harm and employed a reasonable amount of force, the government may yet disprove a claim of self-defense on the ground that the defendant did not subjectively believe her use of force was "necessaty to save herself.” In short, the majority opinion is firmly grounded in the law of this jurisdiction; the dissent is not.

. In a circumstance where a person actually and reasonably believed that she was in imminent danger of bodily harm, it would be functionally impossible for the government to prove beyond a reasonable' doubt. that the defendant’s (actual and reasonable) belief was not, at the very least, a significant component of the motivation behind actions that the defendant took. Our dissenting colleague concedes the difficulty, post, at 860 (dissenting opinion), but does not address (on these facts or more generally) how a trial court could possibly determine that the government had proved beyond a reasonable doubt that a defendant, who actually and reasonably believed she was in imminent danger, had a different guiding motive, id.

. Conversely, if the defendant is shown not to have actually and subjectively believed that she was in imminent danger of bodily harm because the evidence establishes that the defendant acted solely out of anger or because she had an axe to grind, her self-defense claim would fail at the first step. See, e.g., Brown, 256 U.S. at 344, 41 S.Ct. 501 (noting that, where the defendant and decedent had a *848 contentious history, the jury might have thought that the defendant "had not sufficient reason to think that his life was in danger at that time, that he exceeded the limits of reasonable self defen[s]e or even that he was the attacking party”); Kittle, 65 A.3d at 1159 (determining that the complainant’s testimony that his action to restrain defendant made him " ‘mad’ .... indicates that appellant did not wish to be held by [the complainant], [and] does not establish that appellant was frightened or believed that he was in imminent harm” so as to provide a basis for a reasonable doubt instruction); Snell, 754 A.2d at 290-91 (concluding that, where evidence established, inter alia, that appellant "had been involved in a prior violent confrontation,” the trial court "applied the relevant standard, namely, that there was evidence upon which a reasonable mind could find beyond a reasonable doubt that appellant did not reasonably believe he was in imminent danger of bodily harm”).

. Of course, where the government proves beyond a reasonable doubt that the defendant was "the [first] aggressor” or "provoked the conflict upon herself,” the fact-finder need not even reach the core self-defense inquiry. See Criminal Jury Instructions for the District of Columbia, No. 9.504.A.

. In its brief, the government asserts that it was "permissibl[e]” for the trial court to determine that Ms. Parker’s "desire to retaliate against Mr. Powell for spitting on her first” overrode its determination that Ms. Parker subjectively and reasonably believed that she was in imminent danger of bodily harm. But the only authority from this court the government cites for this proposition is Medley v. United States, 104 A.3d 115 (D.C. 2014). In Medley, we adhered to Garibay and reaffirmed that motive evidence — in that case, "outrage” at the victim for giving drugs to the defendant's girlfriend — is admissible to negate a defendant's narrative that he was subjectively afraid. Id. at 129. We did not hold, or even suggest, that once the court had concluded that the defendant was subjectively afraid, such outrage could be independently considered to establish the defendant’s "true” motive.
The government also cites two unpublished decisions from the intermediate appellate court of Kansas (which have no precedential authority even in that jurisdiction and are not favored for citation under Kansas Supreme Court Rule 7.04 (f)) where spitting was found, based on the facts alleged, not to be an act of self-defense (while recognizing that there might be factual scenarios where it would be). But in each of these cases, the intermediate appellate court concluded that the evidence did not support a determination that the defendants subjectively and reasonably believed they were in danger of bodily harm. State v. White, No. 105488, 275 P.3d 931, 2012 WL 1649841, at *3 (Kan. Ct. App. May 4, 2012) (“There was no need for [defendant] to defend himself from any imminent use of unlawful force when he spit on [victim].”); State v. Markou, No. 104931, 255 P.3d 51, 2011 WL 2802408, at *2 (Kan. Ct. App. July 15, 2011) ("[Defendant’s spitting was not done in defense of any imminent use of unlawful force.”).

.See note 23 supra. Accordingly, our dissenting colleague’s assertion, post, at 863 (dissenting opinion), that we are somehow disregarding binding precedent in contravention of M.A.P. v. Ryan, 285 A.2d 310, 312 (D.C. 1971), is without foundation. The invocation of M.A.P. v. Ryan is especially confusing given our dissenting colleague’s concession that “until now” this court has never been confronted with a case where, as here, the question was "whether the defendant used force that was so predictably ineffectual as to not *849 qualify as force the defendant believed was necessary to protect herself.” Post, at 861 (dissenting opinion).

. "Our cases upholding determinations of excessive force 'uniformly involve situations where the secondary, responsive aggression was completely disproportionate to the initial aggression faced.’ ” Williams, 90 A.3d at 1128 (quoting Gay v. United States, 12 A.3d 643, 649 (D.C. 2011)). The government never argued at trial that Ms. Parker’s act of spitting back was disproportionate to being spit upon. To the extent the government now suggests that the act of spitting is inherently intemperate and cannot be self-defense as a matter of law, this division unanimously disagrees. See post, at 858 n.6 (dissenting opinion). We see no reason why, when a defendant reasonably believes herself to be in imminent danger, spitting should be distinguished from other types of assaultive conduct, particularly when being spit on is part of the conduct that induces the defendant’s belief.

. Nor is our concern under the excessive force inquiry the use of too little force. One of the trial court's reasons for rejecting Ms. Parker’s claim of self-defense, seemingly embraced by our dissenting colleague, post, at 844 n.6 (dissenting opinion); see also id. at 861-63, was because, in the court’s view, Ms. Parker’s response was so ineffectual, it had no deterrent value and, had the police not been on site, was likely only to have only prompted a more severe response from Mr. Powell and his family. Again, we do not expect people to be purely rational actors in selecting the proper amount of force to use in response to a reasonably perceived threat to their safety, and we certainly have no desire to encourage individuals to make more aggressive showings of force to ensure they have a legal right to self-defense.